### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Civil Action No. 13-cv-0876-WJM-NYW

XY, LLC,

    Plaintiff / Counterclaim Defendant,

v.

TRANS OVA GENETICS, LC,

    Defendant / Counterclaim Plaintiff,

v.

INGURAN, LLC,

    Third Party Defendant.

---

### ORDER GRANTING COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ANTITRUST COUNTERCLAIMS

---

Plaintiff and Counterclaim Defendant XY, LLC ("XY") brings this action for patent infringement, breach of contract, and related claims against Defendant and Counterclaim Plaintiff Trans Ova Genetics, LC ("Trans Ova" or "Counterclaim Plaintiff"). (ECF No. 113.) Trans Ova brings counterclaims against XY and third-party claims against Inguran, LLC ("Inguran") (together, "Counterclaim Defendants") for, among other claims, monopolization and attempted monopolization under the Sherman Act, 15 U.S.C. § 2. (ECF No. 192 at 59–60.) This matter is before the Court on Counterclaim Defendants' Motion for Summary Judgment on Statute of Limitations Grounds ("Motion") as to the Sherman Act counterclaims. (ECF No. 229.) For the reasons set forth below, the Motion is granted.

## I. BACKGROUND

The relevant undisputed facts are as follows. This case arises out of a License Agreement ("Agreement") into which the parties entered on April 16, 2004, wherein XY licensed its patented sex-selection technology to Trans Ova for use in the animal breeding industry. (Movant's Statement of Material Facts ("MSMF") (ECF No. 229 at 2–3) ¶ 1; ECF No. 247-1 at 21-49.) In the event of certain breaches of the Agreement's limitations and requirements by Trans Ova, the Agreement provided for termination in writing by XY. (ECF No. 47-1 at 30.)

On November 20, 2007, XY delivered a letter to Trans Ova asserting that Defendant had breached the Agreement in various ways and declaring the agreement terminated (the "Termination Letter"). (MSMF ¶ 2.) Trans Ova disagreed with XY's assertion of breach and termination of the Agreement, and over the course of multiple years, the parties negotiated but failed to resolve the dispute. (ECF No. 247-5.) During this time, Trans Ova made royalty payments to XY pursuant to the Agreement, but XY declined all such payments except for one. (ECF No. 192 at 4.)

XY filed its original complaint against Trans Ova in the District Court for the Western District of Texas on March 5, 2012, bringing claims for patent infringement. (ECF No. 4.) On August 1, 2012, Trans Ova filed an Answer and Counterclaims, bringing 33 claims against the Counterclaim Defendants, including the Sherman Act claims at issue here. (ECF No. 5.) The action was transferred to this Court on April 4, 2013. (ECF No. 1.) The operative Amended Counterclaims were filed on April 25, 2014. (ECF No. 192.)

XY and Inguran filed the instant Motion on July 25, 2014, arguing that the Sherman Act claims were time-barred. (ECF No. 229.) Trans Ova filed a Response (ECF No. 247), and XY and Inguran filed a Reply (ECF No. 258).

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III.  ANALYSIS

Counterclaim Defendants argue that Trans Ova's Sherman Act counterclaims are barred by the statute of limitations because they are based on the alleged injury arising from the Termination Letter. (ECF No. 229.) Because the Termination Letter

3

was sent more than four years before the Counterclaims were filed, Counterclaim Defendants contend that the Sherman Act claims are untimely.  (*Id.*)

The statute of limitations for federal antitrust claims is four years.  *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1088 (10th Cir. 2006) (citing *Kaw Valley Elec. Coop. Co. v. Kan. Elec. Power Coop., Inc.*, 872 F.2d 931, 933 (10th Cir. 1989)).  However, the Tenth Circuit recognizes a "continuing conspiracy" exception under which the limitations period restarts when a plaintiff is injured anew by a defendant's separate overt act, even though the defendant acts in furtherance of a conspiracy that began outside the limitations period.  *Id.*  "[F]or an act to trigger the exception: 1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff."  *Id.* (internal quotation marks omitted).

Trans Ova argues that the continuing conspiracy exception applies to render its Sherman Act claims timely.  (ECF No. 247 at 13–14.)  Specifically, Trans Ova contends that the Termination Letter was only the beginning of a course of conduct that continually caused it injury, rather than a final act that caused it singular injury.  (*Id.*)  According to Trans Ova, the Counterclaim Defendants' alleged continuous course of conduct included the following overt acts: (1) misuse of patents through the enforcement of anticompetitive provisions in the Agreement, including XY's breach of contract claim against Trans Ova in this action; (2) the enforcement of fraudulent patents acquired through inequitable conduct before the Patent Office; (3) elimination of competition through the use of long-term exclusive customer agreements; and (4) the

protracted negotiations following the Termination Letter and ending with XY's filing of its Complaint. (*Id.* at 16–23.)

Even assuming that these alleged actions constitute "new and independent act[s] that [are] not merely a reaffirmation of a previous act," however, Trans Ova must also show that these acts resulted in "new and accumulating injury" in order to invoke the continuing conspiracy exception to the four-year limitations period. *See Champagne Metals*, 458 F.3d at 1088. On that issue, Counterclaim Defendants point to the deposition testimony of Trans Ova's damages expert, Dr. David DeRamus, who stated that the "proximate cause" of Trans Ova's damages was the Counterclaim Defendants' attempt to terminate the Agreement. (ECF No. 229 at 5.) Trans Ova argues that Counterclaim Defendants have misconstrued Dr. DeRamus's testimony, and that he was referring to the damages resulting from XY's alleged breach of contract. (ECF No. 247 at 14–15.) Trans Ova's breach of contract claim asserts that the Counterclaim Defendants breached the Agreement by purporting to terminate it without cause when XY sent Trans Ova the Termination Letter. (ECF No. 192 at 60–61.)

Although Trans Ova correctly notes that Dr. DeRamus discussed damages resulting from both the alleged breach of contract and the alleged antitrust violations, his testimony nevertheless fails to support Trans Ova's assertion that it suffered new and accumulating injury from independent acts after the Termination Letter. As Trans Ova admits, both its antitrust and contract damages "result from being excluded from the relevant markets—the technology and sorting markets." (*Id.* at 15.) Dr. DeRamus explained that the damages resulting from the antitrust violations would be the same as those resulting from the breach of contract: "You might calculate them differently in the

decimal points, but I think generally, . . . the damages would be reasonably consistent under either theory." (Deposition of David DeRamus (ECF No. 247-14) at 172; *see also id.* at 169–70 ("I guess the question's whether, you know, proximate cause versus ultimate cause").) Under Dr. DeRamus's theory of damages, the entirety of the injury suffered by Trans Ova could equally have resulted from the alleged breach of contract, which occurred when the Termination Letter was sent, or from the antitrust violations, whose effects were felt over several years. Consequently, Dr. DeRamus's report does not assist Trans Ova in identifying any particular post-Termination Letter damage as a "new and accumulating" injury resulting from the subsequent acts it identifies in its Response, because any such injury could have flowed from the breach of contract.

Although Trans Ova has provided detailed descriptions of Counterclaim Defendants' alleged post-Termination Letter anticompetitive acts, it has not identified any new injury that is specifically attributable to those acts. (ECF No. 247 at 16–22.) Instead, Trans Ova refers generally to its injury resulting from Counterclaim Defendants' exclusion of Trans Ova from the technology and sex-sorting markets. (*Id.* at 15.) Accordingly, the Court finds that Trans Ova has failed to show that those acts caused new and accumulating injury sufficient to trigger the continuing conspiracy exception to the four-year statute of limitations. *See Champagne Metals*, 458 F.3d at 1088.

Because Trans Ova has not established that any exception applies, the four-year limitations period applies to its antitrust counterclaims. *See id.* Viewed in the light most favorable to Trans Ova, the evidence shows that Trans Ova's injuries began when Counterclaim Defendants prevented it from fairly competing in the technology and sorting markets by purporting to terminate the Agreement on November 20, 2007.

(ECF Nos. 247-14 at 6–30; 247-15 at 1–11.)  Thus, the antitrust claims were untimely unless they were filed on or before November 20, 2011.[1]  The parties dispute whether the filing date of the Counterclaims, August 1, 2012, controls (ECF No. 229 at 5–6), or whether the filing date should relate back to March 5, 2012, the date of XY's initial complaint (ECF No. 247 at 17 n.9).  The Court need not resolve this dispute because Trans Ova's Sherman Act claims are untimely by either date.

Therefore, the Court finds that Trans Ova's Sherman Act claims are barred by the statute of limitations, and Counterclaim Defendants' Motion is granted.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. XY, LLC and Inguran, LLC's Motion for Summary Judgment on Statute of Limitations Grounds (ECF No. 229) is GRANTED; and

2. Trans Ova Genetics, LC's counterclaims for monopolization and attempted monopolization are barred by the statute of limitations.  When judgment is entered, it shall be in favor of XY and Inguran and against Trans Ova as to those claims.

---

[1] The Court notes that some ambiguity exists as to whether a limitations period begins running on the date of the triggering event or on the following day pursuant to the calculation method under Federal Rule of Civil Procedure 6(a).  *See, e.g.*, *Simon v. Wis. Marine Inc.*, 947 F.2d 446, 447 (10th Cir. 1991); *Bailey v. Faux*, 704 F. Supp. 1051, 1053–4 (D. Utah 1989).  As the instant case does not depend on this one-day distinction, the Court need not resolve the question here.

Dated this 26th day of March, 2015.

BY THE COURT:

William J. Martinez
United States District Judge