**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-0876-WJM-NYW

XY, LLC,

    Plaintiff / Counterclaim Defendant,

v.

TRANS OVA GENETICS, LC,

    Defendant / Counterclaim Plaintiff / Third-Party Plaintiff,

v.

INGURAN, LLC,

    Third-Party Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
INGURAN, LLC'S MOTION FOR JUDGMENT**

---

On March 26, 2015, this Court granted partial summary judgment ("Summary Judgment Order") in favor of Counterclaim Defendant XY, LLC ("XY") and Third-Party Defendant Inguran, LLC ("Inguran"), holding that Counterclaim Plaintiff and Third-Party Plaintiff Trans Ova Genetics, LC ("Trans Ova") was barred by the statute of limitations from asserting its claims under the Sherman Act, 15 U.S.C. § 2.  (ECF No. 284.)  On December 30, 2015, the Court granted Trans Ova's request to reassert its antitrust claims defensively via a recoupment claim against XY, but denied the same request as against Inguran.  (ECF No. 376.)

Now before the Court is Inguran's Motion for Judgment in Light of Summary Judgment Order Regarding Antitrust Claims ("Motion"), which seeks an entry of

judgment in favor of Inguran pursuant to Federal Rule of Civil Procedure 54(b), or in the alternative, dismissal of the remaining claims against Inguran under Federal Rule of Civil Procedure 12(c) and/or Rule 14(a)(4).  (ECF No. 334.)  For the reasons stated below, the Motion is denied as to the request for Rule 54(b) entry of judgment in favor of Inguran, but granted as to the alternative request for Rule 12(c) judgment on the pleadings.

## I.  DISCUSSION

### A.    Rule 54(b)

Rule 54(b) states that "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, . . . parties only if the court expressly determines that there is no just reason for delay."  Rule 54(b) was adopted to codify the "historic rule in the federal courts [which] has always prohibited piecemeal disposition of litigation . . . [and] to avoid the possible injustice of a delay in judgment of a distinctly separate claim to await adjudication of the entire case."  Fed. R. Civ. P. 54(b) advisory committee's note.

"Rule 54(b) entries are not to be made routinely . . . .  [T]rial courts should be reluctant to enter Rule 54(b) orders since the purpose of this rule is a limited one: to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships."  *Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001) (citations omitted).  To grant a motion under Rule 54(b), a court must make two "express determinations": (1) that the relevant order is a final order, and (2) that there is no just reason to delay entry of judgment until a conclusive ruling has been made on all

claims and all parties to the case.  *Id.*

Inguran's Motion makes no attempt to demonstrate that either of these express determinations should be made here.  The Motion is primarily dedicated to the argument that Trans Ova's remaining claims against Inguran are not viable as a consequence of the Summary Judgment Order, but contains no argument that the Summary Judgment Order finally resolves those claims or that there is "no just reason for delay."  Fed. R. Civ. P. 54(b).  Inguran has therefore failed to meet its burden to show that a hardship or injustice would result from delaying the entry of judgment in its favor until after all the claims in this action have been resolved.

Accordingly, Inguran's Motion for entry of judgment under Rule 54(b) is denied.

**B.     Rule 12(c)**

A motion for judgment on the pleadings pursuant to Rule 12(c) is evaluated under the same standard applicable to a Rule 12(b)(6) motion.  *See Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).  In evaluating such a motion, a court must "'accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party.'"  *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005) (quoting *Clark v. State Farm Mut. Auto Ins. Co.*, 319 F.3d 906, 914 (10th Cir. 2005)); *see also Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 704 (10th Cir. 2014).  The dispositive inquiry is whether the pleadings contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal

rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

Trans Ova argues that its remaining claims against Inguran, which include breach of contract, breach of the duty of good faith and fair dealing, inequitable conduct as to five of the patents ('425, '687, '921, '860, and '053), and patent misuse (*see* ECF No. 301 at 22–23), remain viable regardless of the Summary Judgment Order. (ECF No. 357 at 5–15.) Inguran's Motion, however, argues that (1) the breach of contract and breach of good faith and fair dealing claims cannot apply to Inguran because it was not a party to the contract, and (2) the inequitable conduct and patent misuse claims cannot apply to Inguran because they are solely defenses to XY's claims of patent infringement, not affirmative claims that may be brought against a third party. (ECF No. 334.) The Court will discuss each of these arguments in turn.

  1. <u>Contract Claims</u>

Inguran argues that it cannot be held liable on Trans Ova's claims for breach of contract and breach of the duty of good faith and fair dealing because the License Agreement that was allegedly breached (and out of which the duty of good faith arises) was solely between Trans Ova and XY. (ECF No. 334 at 3–4.) Inguran further notes that Trans Ova did not explicitly plead an alter ego theory of liability, and argues that such a claim would fail in any event because Trans Ova has not pled facts supporting the requisite elements. (ECF No. 364 at 4–5.)

As Trans Ova's Response does not defend its contract claims against Inguran on any basis other than an alter ego theory, the Court concludes that alter ego is the sole basis on which Trans Ova seeks to hold Inguran liable on these claims. (*See* ECF No. 357 at 9.)  Trans Ova does not contest Inguran's assertion that the words "alter ego" are conspicuously absent from the Amended Answer and Counterclaims and the Final Pretrial Order.  Instead, it argues that it has pled sufficient facts to support its allegations that Inguran completely controlled XY's activities, and thus Trans Ova has established the necessary elements of an alter ego claim. (*Id.* at 12–13.)

Both parties cite *Swinerton Builders v. Nassi*, 272 P.3d 1172, 1177 (Colo. App. 2012) as defining and establishing the elements of an alter ego theory of liability under Colorado law. (*See* ECF No. 334 at 4; ECF No. 357 at 10.)  As *Swinerton* states, an alter ego theory is a method by which the corporate veil may be pierced to hold liable a separate entity that has used the corporation as its alter ego, thus preventing that entity from using the corporate form to shield itself from liability.  272 P.3d at 1177.  In evaluating whether an alter ego theory is viable, Colorado courts consider three factors: (1) whether the corporate entity is the alter ego of the third party, such that the corporation is a "mere instrumentality" for the third party and a "unity of interest" exists such that both entities may be considered one; (2) whether justice requires disregarding the corporate form "because the corporate fiction was used to perpetrate a fraud or defeat a rightful claim"; and (3) "whether an equitable result will be achieved by disregarding the corporate form and holding the [third party] personally liable for the acts of the corporation."  *Id.*  "A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each of the foregoing factors has been satisfied."  *Id.*

Trans Ova's pleadings are replete with allegations that Inguran completely controlled XY in committing its various alleged wrongful acts. (*See, e.g.*, ECF No. 301 at 16, 19–20, 23.) Accordingly, despite the absence of the words "alter ego," the Court finds that, viewed in the light most favorable to Trans Ova, its allegations plausibly establish that XY is the alter ego of Inguran. However, Trans Ova has not pointed to, and the Court has not found, any allegations in Trans Ova's pleadings that Inguran used the corporate form to "perpetrate a fraud or defeat a rightful claim" such that justice requires piercing the corporate veil. *See Swinerton*, 272 P.3d at 1177. As *Swinerton* makes clear, "the corporate veil may be pierced only when the corporate form was used to shield a [third party]'s improprieties." *Id.* Here, Trans Ova alleges that after Inguran purchased a controlling interest in XY, it induced XY to wrongfully terminate its License Agreement with Trans Ova, and further induced XY to reject Trans Ova's attempt to proceed to Phases II or III of the License Agreement or to renegotiate the License Agreement in good faith. (ECF No. 301 at 22–23.) While these allegations could conceivably constitute an interference tort, they do not establish that Inguran used the corporate form to shield itself or that justice requires piercing the corporate veil. Furthermore, Trans Ova has not pled that equity requires disregarding the corporate form, as Trans Ova can obtain relief for the contract claims from XY itself.

The Court concludes that Trans Ova's pleadings lack allegations establishing the second and third requisite elements of an alter ego theory under which Inguran might be held liable for the contract claims. As such, judgment on the pleadings is appropriate as to Trans Ova's claims against Inguran for breach of contract and breach of the duty of good faith and fair dealing.

### 2. Defenses to Infringement

Inguran next argues that Trans Ova's patent misuse and inequitable conduct claims against it must fail because both are defenses to a patent owner's claim of infringement, and it is XY—not Inguran—that owns the patents and has brought claims of infringement here. (ECF No. 334 at 4–5.) Trans Ova defends its patent misuse claim by arguing that Inguran's control over XY should be considered as part of the analysis of market power, which is an element of the patent misuse defense. (ECF No. 357 at 6–9.) Trans Ova contends that "the Court can, and should still, consider evidence of anticompetitive conduct because that is still very much relevant to Trans Ova's patent misuse defense. And Inguran both directed and is an integral part of that anticompetitive conduct." (*Id.* at 8.) Trans Ova does not make separate arguments defending its inequitable conduct claims, merely reasserting that it has sufficiently alleged that Inguran controlled XY. (*Id.* at 12–13.)

Trans Ova's arguments are not on point. The Motion at issue here deals not with the admissibility or relevance of evidence of anticompetitive conduct or Inguran's alleged market power, but with whether Trans Ova has stated a claim against Inguran under which it can be held liable. As to the latter point, Trans Ova cites a 2004 case in this District holding that a parent corporation that directs its subsidiary to engage in anticompetitive conduct may be directly liable under the Sherman Act. (*Id.* (quoting *Nobody in Particular Presents, Inc. v. Clear Channel Comm'cns*, 311 F. Supp. 2d 1048, 1069–70 (D. Colo. 2004)).) But this case is irrelevant to the instant Motion. The Court has already held that Trans Ova's Sherman Act claims are time-barred, and those claims were not revived as against Inguran via recoupment because recoupment may

only be asserted as a defense.  (*See* ECF Nos. 284 & 376.)  *Nobody in Particular* deals with affirmative Sherman Act claims, not patent misuse claims against third parties.

Trans Ova has not cited any authority supporting the proposition that patent misuse or inequitable conduct can be asserted against a third party that is not a patent owner claiming infringement.  Instead, the case law is clear that these are equitable defenses to patent infringement, not affirmative claims.  *See Therasense, Inc. v. Becton, Dickinson, & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) ("Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent."); *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1428 (Fed. Cir. 1997) ("Patent misuse . . . [is] an equitable defense available to the accused infringer . . . [which] results in rendering the patent unenforceable until the misuse is purged.  It does not, however, result in an award of damages to the accused infringer.").

The Court concludes that Trans Ova has failed to state a claim for patent misuse or inequitable conduct against Inguran because these are not affirmative claims, but are instead defenses against XY's claims of infringement.  As such, the Court finds that judgment on the pleadings is appropriate as to these claims under Rule 12(c).

As the instant Order resolves all claims against Inguran that remain, Inguran shall be terminated as a party from this action.

## II. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS as follows:

1. The Motion for Judgment as to Inguran, LLC in Light of Summary Judgment Order Regarding Antitrust Claims (ECF No. 334) is GRANTED IN PART and DENIED IN PART;

2. The Motion is DENIED as to Inguran's request for Rule 54(b) entry of judgment; and

3. The Motion is GRANTED as to Inguran's request for Rule 12(c) judgment on the pleadings as to Trans Ova's third-party claims against Inguran.  As no claims against Inguran remain, Third-Party Defendant Inguran, LLC, shall be removed from the case caption in future filings, and Trans Ova shall no longer be referred to as a Third-Party Plaintiff.

Dated this 5th day of January, 2016.

BY THE COURT:

_____
William J. Martinez
United States District Judge