**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-0876-WJM-NYW

XY, LLC,

      Plaintiff / Counterclaim Defendant,

v.

TRANS OVA GENETICS, LC,

      Defendant / Counterclaim Plaintiff.

---

## ORDER ON MOTIONS *IN LIMINE*

---

Plaintiff XY, LLC ("XY") brings this case against Defendant Trans Ova Genetics, LC ("Trans Ova"), arising from disputes over a License Agreement which had permitted Trans Ova to use XY's patented technology. XY brings claims for breach of contract and patent infringement, and Trans Ova counterclaims for breach of contract and breach of the covenant of good faith and fair dealing, as well as asserting various defenses. (*See* ECF No. 301.) This case is set for a three-week jury trial commencing on Monday, January 25, 2016, with the Final Trial Preparation Conference set for January 8, 2016. (ECF No. 314.)

This matter is before the Court on three pending Motions *in Limine*. (ECF Nos. 365, 367, 370). For the reasons set forth below, the parties' Joint Motion to Grant Stipulated Motions *in Limine* (ECF No. 370) is granted, and the parties' respective disputed Motions *in Limine* (ECF Nos. 365 & 367) are granted in part and denied in part.

# I.  XY'S MOTION *IN LIMINE*

XY[1] moves to exclude several different categories of evidence, which the Court will discuss in turn.  (*See* ECF No. 367.)

## A.  *ABS Global v. Inguran* and *Semex Alliance v. Elite Dairy Genomics*

XY seeks to exclude evidence or argument related to two cases in other districts: *ABS Global, Inc. v. Inguran, LLC*, and *Semex Alliance v. Elite Dairy Genomics, LLC*. (*Id.* at 1.)  XY argues that these two cases are irrelevant to the instant action, and to the extent they are at all relevant, they are excludable under Federal Rule of Evidence 403. (*Id.* at 1–3.)

As to *ABS Global*, which is a pending case in the Western District of Wisconsin, Trans Ova argues that it should be permitted to introduce evidence of ABS's complaint against Inguran and one of its subsidiaries which alleges that the subsidiary used its market dominance to force ABS into an onerous long-term contract when it otherwise might have used individual purchase orders or at-will sales.  (ECF No. 375 at 1–2.) Trans Ova argues that the *ABS Global* complaint demonstrates that, in the absence of a long-term contract requirement, "ABS would have engaged in business with a competitor that would have provided ABS with more favorable contracts—and that would have been Trans Ova, the only viable competitor at the time." (*Id.* at 2.)

The Court agrees with XY's assertion in its Motion that this argument is purely speculative.  First, these allegations appear in a complaint in a pending case, and have

---

[1] XY's Motion was brought by both XY and then-Third Party Defendant Inguran.  (ECF No. 367 at 1.)  However, all claims against Inguran have since been dismissed, and Inguran is no longer a party to this action.  (ECF No. 393.)  As such, the Court will discuss the motion as if brought solely by XY.

not yet been determined to be true; ABS has not yet proven that it should not have

been subjected to the challenged contract, and the issues raised in making the

necessary proof may be completely unrelated to the facts of the instant case.

Furthermore, even taking the allegations in the *ABS Global* complaint as fact, Trans

Ova has no way of demonstrating that, if Inguran and its subsidiary had *not* forced ABS

and their other licensees into long-term contracts, Trans Ova would have been the only

possible competitor with which ABS would necessarily have done business.  Instead, it

is just as conceivable that, in the absence of such long-term contracts, other

competitors might have arisen in the newly free-market bovine semen industry.  In sum,

the Court finds Trans Ova's arguments unpersuasive and concludes that there is a high

likelihood that introduction of evidence relating to *ABS Global* would be confusing,

misleading, and a waste of time.  As that risk substantially outweighs the evidence's

limited relevance, it is excluded under Rule 403.

　　　As to *Semex Alliance*, a case in the Southern District of Ohio involving a dispute

over the purchase of particular bulls, Trans Ova's Response to XY's Motion fails to

make any argument opposing exclusion.  (*See* ECF No. 375 at 1–2.)  The Court deems

XY's Motion confessed as to *Semex Alliance*, which XY asserts is irrelevant to the

instant litigation.  Accordingly, evidence relating to *Semex Alliance* will also be excluded

at trial.

**B.**　　***Inter Partes* Reviews of XY Patents**

　　　XY moves to preclude the introduction of evidence of *Inter Partes* Review

proceedings before the Patent Trial and Appeal Board ("PTAB") as to two of the

patents-in-suit (the '920 Patent and the '425 Patent).  (ECF No. 367 at 3–4.)  XY argues

that the PTAB's decision to institute these proceedings, which are currently pending,

indicates that the PTAB found the question of patent validity to be worthy of a full

hearing, but that this is of limited relevance here because the PTAB applies a different

claim construction analysis and standard of review than the one applied by this Court.

(*Id.*)

Trans Ova argues that the *Inter Partes* Review proceedings are relevant to rebut

XY's claim that Trans Ova willfully infringed the patents, because they support Trans

Ova's position that it has a good faith belief that the patents are invalid.  (ECF No. 375

at 2–3.)  Trans Ova agrees that it will not introduce such evidence to support its claim of

invalidity, but solely to mitigate against a finding of willfulness.  (*Id.*)

The Court agrees that the evidence of the pending *Inter Partes* Review

proceedings is relevant to willfulness, but finds that that relevance is substantially

outweighed by the danger of undue prejudice, making this evidence excludable under

Rule 403.  *See SSL Servs, LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1092–93 (Fed. Cir.

2014) (affirming a district court's exclusion of evidence of Patent and Trademark Office

reexamination on 403 grounds, as "this court's precedent has often warned of the

limited value of actions by the PTO to establish a good faith belief of invalidity" (internal

quotation marks omitted)).  There is a substantial risk that the jury will give undue

weight to evidence of a decision by a judicial body, even a preliminary decision by an

administrative adjudicator, that evaluates the same invalidity question that the jury must

decide.  Given the limited probative value of the PTAB's findings thus far, as well as the

differing legal standards applied in the *Inter Partes* Review proceedings as compared to the instant case, it would be difficult, if not impossible, for a limiting instruction to sufficiently mitigate such prejudice.

Accordingly, the Court finds that the probative value of the *Inter Partes* Review evidence is substantially outweighed by the danger of unfair prejudice and misleading the jury, and therefore this evidence shall be excluded under Rule 403.

**C.    *XY v. Hasler* and Motion to Disqualify**

XY seeks to exclude any evidence that it moved to disqualify former XY employee Dr. John F. Hasler from testifying as an expert for Trans Ova in this case, as well as evidence of a lawsuit XY brought against Dr. Hasler seeking to enjoin him from revealing allegedly privileged information.  (ECF No. 367 at 4–5.)  Trans Ova stipulates to exclude evidence of the lawsuit, and states that it would also agree to exclusion of evidence related to XY's motion to disqualify if XY agrees not to impeach Dr. Hasler with evidence from his declarations attached to the motion.  (ECF No. 375 at 3–4.)  Trans Ova argues that it would be "patently unfair" to permit XY to impeach Dr. Hasler with motion-related documents while prohibiting Trans Ova from making reference to the motion to disqualify.  (*Id.* at 4.)

The Court disagrees.  Dr. Hasler's prior statements may be used for impeachment purposes without reference to the underlying motion to disqualify or XY's reasons for so moving.  The same is not true of other, non-impeachment references to the motion to disqualify.  As to the remainder of the evidence challenged here, the Court agrees that it would be unfairly prejudicial and confusing for the jury to receive

evidence about the machinations of XY's litigation over privilege and confidentiality when such issues have since been resolved.  The Court is also persuaded by XY's argument that a jury could assume that XY's motion to disqualify Dr. Hasler, and its lawsuit against him to the same end, might signify XY's attempt to silence Dr. Hasler, which would result in undue emphasis being placed on his testimony.  (*See* ECF No. 367 at 5.)

As such, the Court finds that the evidence of XY's lawsuit against Dr. Hasler and its motion to disqualify him shall be excluded under Rule 403, but Dr. Hasler may be impeached with prior statements he made in relation to the motion to disqualify.  Should Dr. Hasler or counsel need to refer to the context of the statements in the course of impeachment or rehabilitation, they may refer generically to the statements having been made in prior proceedings in an earlier part of this case without providing the jury with details of the motion to disqualify.

**D.    Antitrust, Anticompetitive Conduct, Market Power, and Related Terms**

XY moves to preclude any references to "antitrust," "monopolization," "monopoly," "anticompetitive conduct," XY's or Inguran's attempts to gain market power, or harm to competitors or competition, all based on the Court's Order Granting Summary Judgment on Trans Ova's Sherman Act counterclaims.  (ECF No. 367.)  In that Order, the Court found that Trans Ova's claims under the Sherman Act were time-barred and granted summary judgment as to those claims.  (ECF No. 284.)

However, since XY's Motion was filed, the Court has permitted Trans Ova to reassert its substantive antitrust claims via a recoupment defense against XY, which—if successful—would allow Trans Ova to offset any damages XY might win on its claims.

6

(ECF No. 376.)  This order precludes XY's argument that the challenged terminology and argument relating to Trans Ova's dismissed Sherman Act claims are no longer relevant, because the claims have been revived against XY and may still be argued to the jury.  (*Id.*)  The Court concludes that these terms and arguments may be introduced in support of Trans Ova's recoupment defense, and therefore XY's Motion is denied in this respect.

XY also moves to preclude the introduction of evidence of Inguran's alleged market power.  (ECF No. 367 at 7.)  This requires a different analysis, because Trans Ova's antitrust claims against Inguran were not revived via recoupment, and the Court has since dismissed Trans Ova's patent misuse claim against Inguran.  (*See* ECF No. 393.)  XY argues that the only conceivable relevance of Inguran's market power at this point could be to Trans Ova's patent misuse defense against XY's infringement claim, which requires a showing of market power; however, only the market power of the patent owner—here, XY—is relevant to patent misuse.  (ECF No. 367 at 7.)  Accordingly, XY contends that evidence of Inguran's market power is no longer relevant to the case.  (*Id.*)

In response, Trans Ova argues that Inguran's market power provides necessary context for its evidence of XY's market power in support of its patent misuse defense, given Inguran's control over XY and Inguran's use of XY's market power to bolster its own.  (ECF No. 375 at 6.)  The Court agrees that this evidence is relevant for that purpose, but notes that there is a risk of jury confusion from the introduction of evidence related to Inguran's market power when the jury must ultimately evaluate only XY's.  Accordingly, should Trans Ova seek to introduce such evidence, the Court will read a

limiting instruction clarifying the purposes for which this evidence may, and may not, be used.  Counsel for the parties are directed to make every attempt to stipulate to such a limiting instruction, but if no stipulation can be reached, the parties should submit their separate proposed limiting instructions to the Court no later than January 20, 2016.

### E.    FTC Investigations

XY seeks to preclude the introduction of any evidence related to the Federal Trade Commission's ("FTC") non-public investigation of a company recently acquired by Inguran and its allegedly anticompetitive actions.  (ECF No. 367 at 7–8.)  In response, Trans Ova argues that it has not been provided with any such evidence and cannot ascertain whether it might be relevant.  (ECF No. 375 at 6–7.)

Given Trans Ova's lack of access to the challenged evidence, the Court cannot imagine how Trans Ova might introduce it at trial over XY's objection.  As such, and in reliance on Trans Ova's representation that it possesses no evidence of these FTC investigations, the Court denies this portion of XY's Motion as moot.

### F.    Termination of the License Agreement and Negotiations for a New License

XY moves to preclude Trans Ova from "arguing or insinuating" that XY should not have terminated the License Agreement, because XY contends that such termination was within its contractual rights.  (ECF No. 367 at 8.)  XY also moves to preclude Trans Ova from arguing that XY should have given Trans Ova a new license or that XY acted improperly in negotiating for a new license, and seeks to exclude any reference to the terms of any proposed new license agreement between the parties. (*Id.* at 8–9.)  This portion of XY's Motion relies on the argument that it was appropriate

8

for XY to terminate the License Agreement, that it was therefore under no obligation to offer a new license to Trans Ova, and that any evidence of negotiations for such new license would improperly suggest that the initial termination was ineffective.  (*Id.*)

The Court disagrees that any of this evidence should be excluded at trial.  As to argument regarding the termination of the License Agreement, the parties dispute whether such termination was permissible or whether it breached the License Agreement and/or the duty of good faith and fair dealing.  (*See* ECF No. 375 at 7.)  This is a central question in the case, and as such, the jury must be permitted to hear evidence as to both parties' positions.  Regarding the negotiations for a new or amended license, the Court agrees with Trans Ova's contention that the fact that it sought a new license agreement is relevant and admissible to rebut XY's claim of willful infringement.  (*See id.* at 7–8.)  XY is free to argue to the jury that it had no obligation to enter into a new license agreement, but the Court will not preclude the introduction of this evidence.

Finally, regarding the terms of any proposed new license, Trans Ova argues that this evidence reveals XY's market power—relevant to the defenses of recoupment and patent misuse—because it demonstrates that XY rebuffed Trans Ova's attempts to proceed to Phases II and III of the License Agreement and acted to exclude Trans Ova from the market.  XY contends that such evidence is excludable as settlement negotiations under Federal Rule of Evidence 408 if Trans Ova seeks to introduce this evidence to prove that XY's termination of the License Agreement was not effective. While the Court agrees that Rule 408(a) prohibits such use of evidence of settlement negotiations, Trans Ova represents that it seeks to use the evidence for a different

9

purpose.  As such, and in reliance on Trans Ova's representations, the Court denies

XY's Motion as to this evidence as well.

## G.  Invalidity and Infringement

Finally, XY argues that Trans Ova should be precluded from arguing that the

patents-in-suit are invalid, and that therefore it does not infringe them.  (ECF No. 367 at

9–10.)  XY contends that such an argument would improperly conflate the analyses of

infringement and invalidity.  (*Id.*)

The Court disagrees.  It is axiomatic that if a patent is invalid, it cannot be

infringed.  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015).  While

invalidity and infringement are distinct legal analyses, *see id.* at 1928, and the jury will

be so instructed, Trans Ova may argue that it is not liable for infringement because the

patents are invalid; this is the essence of its invalidity claim.  *See id.* ("an accused

infringer 'may prevail either by successfully attacking the validity of the patent or by

successfully defending the charge of infringement'" (quoting *Deposit Guaranty Nat'l

Bank v. Roper*, 445 U.S. 326, 334 (1980))).  As such, the Court will not preclude Trans

Ova from introducing this argument, and XY's Motion is denied as to this evidence.

## II.  TRANS OVA'S MOTION *IN LIMINE*

Trans Ova moves to exclude four categories of evidence: (1) evidence related to

litigation in Canada between XY and International Newtech Development, Inc. ("IND"),

its former licensee; (2) evidence of Trans Ova's purchase by Intrexon; (3) evidence

related to the Australian prosecution and conviction of Dr. Mervyn Jacobsen for

securities fraud; and (4) reference to claims from the patents-in-suit beyond the

agreed-upon 48 claims currently at issue.  (ECF No. 365.)  As the parties have stipulated to exclude the third and fourth categories of evidence, the Court grants Trans Ova's Motion as to those issues.  The Court will discuss the other two issues in turn.

**A.     *XY v. IND***

Trans Ova argues that XY should be precluded from introducing any evidence related to the proceedings and judgment in a Canadian court which held that XY had properly terminated a license agreement with IND, and that some of IND's employees, including Dr. Richard Remillard and Todd Cox, had committed acts of fraud.  (ECF No. 365 at 3–5.)  Trans Ova subsequently hired Dr. Remillard and Mr. Cox, and now contends that XY would improperly attempt to use evidence of the judgment in *XY v. IND* to argue that these individuals acted in the instant case in conformity with their prior wrongful acts or bad character, in violation of Federal Rule of Evidence 404.  (*Id.*) Trans Ova further argues that any evidence of this case would improperly prejudice Trans Ova by suggesting that, because XY's prior termination of its licensee was found to be proper, its termination in the instant case was proper as well, even though the Canadian court applied different law and different legal standards.  (*Id.*)

XY raises three arguments that the judgment in *XY v. IND* should be admissible here.  First, XY argues that this evidence rebuts Trans Ova's claim that XY failed to negotiate with Trans Ova in good faith, because XY's reticence to work with Dr. Remillard and Mr. Cox at Trans Ova was based on their prior wrongful actions.  (ECF No. 374 at 2–3.)  XY further argues that it does not seek to introduce evidence of the *XY v. IND* judgment to show that Dr. Remillard or Mr. Cox acted in conformity with their

11

previous bad character or acts, but rather to show that XY did not act improperly.  This argument is merely character evidence in another form.  XY essentially contends that, instead of arguing to the jury that Dr. Remillard acted in conformity with his prior wrongful acts, it should be permitted to argue to the jury that XY behaved as it did because it reasonably believed that Dr. Remillard would act in conformity with his prior wrongful acts.  As this still relies on improper character evidence, XY's argument does not provide a permissible basis for its introduction.

XY also argues that evidence of the *XY v. IND* case should be admitted because it demonstrates that XY had a good faith basis to terminate the License Agreement with Trans Ova, and that XY's approach to terminating licensees "has been more than validated in other instances."  (ECF No. 374 at 4.)  The Court is unpersuaded.  XY's argument amounts to the contention that the jury should be permitted to infer that XY's termination of Trans Ova's license was proper because its termination of another licensee was proper.  It is Trans Ova, not any other licensee, that is at issue here, and any evidence that a foreign jurisdiction has validated similar conduct with a third party in an unrelated case would unfairly prejudice Trans Ova.  This argument does not present a basis to admit the evidence.

However, the Court is persuaded by XY's final argument, namely that evidence of the judgment's finding that Dr. Remillard committed fraud demonstrates Dr. Remillard's bias against XY.  (*See* ECF No. 374 at 3.)  The Court agrees that such evidence is highly relevant, and is admissible for impeachment purposes.  However, such evidence may be introduced without reference to the rest of the *XY v. IND* judgment.  Therefore, the Court will permit XY to impeach Dr. Remillard by introducing

evidence that he was found to have committed fraudulent acts toward XY in a prior lawsuit by XY against his prior employer, but will not permit XY to introduce other evidence of the *XY v. IND* judgment, and may not present evidence that the Canadian court found that its termination of IND was proper.  Mr. Cox may be similarly impeached, with similar limitations.

## B.      Intrexon's Purchase of Trans Ova

Finally, Trans Ova moves to preclude the introduction of evidence that it was purchased by Intrexon in 2014, years after the events at issue in this case, principally because the jury might improperly assume that Trans Ova now has the resources to satisfy a large judgment.  (ECF No. 365 at 5–8.)  In response, XY argues that Dr. David Faber, a witness for Trans Ova, has a financial stake in the outcome of this litigation via Intrexon's purchase of Trans Ova because his company previously owned the majority of Trans Ova's shares, and the purchase agreement provides for Dr. Faber as a shareholder to benefit from any award Trans Ova receives on its counterclaims.  (ECF No. 374 at 5.)  XY seeks to introduce evidence of this potential bias for impeachment purposes, and states that it will not refer to Trans Ova's ability to satisfy a judgment. (*Id.*)

The Court agrees with XY that this evidence of Dr. Faber's potential bias is highly probative, and will permit it to be introduced at trial.  However, given the risk of prejudice from evidence of Intrexon's purchase of Trans Ova, XY must limit its use of this evidence to generic references to contractual agreements providing Dr. Faber with a financial stake in the case and the potential profit he might gain if Trans Ova prevails, rather than introducing evidence regarding Intrexon.

### III.  JOINT MOTION TO GRANT STIPULATED MOTIONS *IN LIMINE*

The parties have stipulated to exclude ten additional categories of evidence, and have jointly moved for an order to preclude such evidence from being introduced without obtaining prior approval of the Court.  (ECF No. 370.)  Given the parties' stipulation, the Court grants the Joint Motion and will preclude introduction of the requested categories of evidence, which are listed below.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      XY's Motions *in Limine* (ECF No. 367) and Trans Ova's Motion *in Limine* (ECF No. 365) are each GRANTED IN PART and DENIED IN PART;

2.      Should Trans Ova seek to introduce evidence of Inguran's market power, the Court will read a limiting instruction, and the parties shall submit a proposed limiting instruction to the Court no later than January 20, 2016; and

3.      The following evidence shall be EXCLUDED at trial, as further detailed herein:

   a.      Evidence relating to *ABS Global, Inc. v. Inguran, LLC*, or *Semex Alliance v. Elite Dairy Genomics, LLC*;

   b.      Evidence of the PTAB's pending *Inter Partes* review of two of XY's patents;

   c.      Evidence of XY's lawsuit against Dr. Hasler and its motion to disqualify him as an expert, except for impeachment with his prior statements made in relation to the motion to disqualify;

d.    Evidence relating to *XY, Inc. v. International Newtech Development, Inc.*, except for the existence of the judgment and its findings regarding Dr. Remillard's acts for impeachment purposes;

e.    Evidence of Intrexon's purchase of Trans Ova, except for evidence of Dr. Faber's financial stake in the outcome of the instant litigation for impeachment purposes;

f.    Evidence or argument referencing non-asserted claims of the patents-in-suit;

g.    Evidence or argument regarding any criminal proceedings involving Dr. Mervyn Jacobsen, or their outcome;

h.    Evidence or argument referencing any of the following disputes and litigation involving XY and Inguran:

1.    *Colorado State University Research Foundation v. XY* and related disputes,

2.    *Mervyn Jacobson v. XY, Inc.*, and

3.    *XY, LLC v. Ottenberg*, except to the extent a reference to the case is necessary to support Trans Ova's impeachment of an XY witness;

i.    Evidence or argument referencing XY's lawsuit against Dr. Hasler, so long as cross examination of Dr. Hasler does not open the door to such evidence by, for example, referencing statements made by Dr. Hasler in response to allegations he breached a fiduciary duty;

j.      Expert opinions not expressed in reports or depositions, except for

        testimony reasonably calculated to provide context for disclosed expert

        opinions;

k.      Evidence or argument disparaging the United States Patent and

        Trademark Office, provided that nothing in the expert reports of Mr. Doll or

        Mr. Godici violate this order, nor do arguments reasonably related to such

        reports;

l.      Evidence or argument referencing the fact that this case was originally

        filed in the Western District of Texas or the briefing and Order on the

        Motion to Dismiss or Transfer Venue;

m.      Evidence not provided in response to a disclosure obligation or a

        discovery request, including expert opinions not previously disclosed;

n.      Evidence or argument that the acquisition of sorting systems and nozzles

        from sources other than XY-approved sources is an exhaustion defense

        to patent infringement; and

o.      Prior art not relied upon in Trans Ova's expert reports on invalidity.


Dated this 7th day of January, 2016.

                                            BY THE COURT:


                                            _____
                                            William J. Martinez
                                            United States District Judge