**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-0876-WJM-NYW

XY, LLC,

      Plaintiff / Counterclaim Defendant,

v.

TRANS OVA GENETICS, LC,

      Defendant / Counterclaim Plaintiff.

---

## ORDER ON MOTIONS TO EXCLUDE EXPERT TESTIMONY

---

      Plaintiff XY, LLC ("XY") brings this case against Defendant Trans Ova Genetics, LC ("Trans Ova") arising out of disputes over a License Agreement which had permitted Trans Ova to use XY's patented technology.  XY brings claims for breach of contract and patent infringement, and Trans Ova counterclaims for breach of contract and breach of the covenant of good faith and fair dealing, as well as asserting various defenses.  (*See* ECF No. 301.)  This case is set for a three-week jury trial commencing on Monday, January 25, 2016, with the Final Trial Preparation Conference set for January 8, 2016.  (ECF No. 314.)

      This matter is before the Court on three motions seeking to exclude expert testimony.  For the reasons set forth below, XY's Motion to Exclude Expert Testimony of Dr. David DeRamus (ECF No. 330) is denied in its entirety, and Trans Ova's Motions to Exclude Testimony of XY's Expert Dr. James C.S. Wood (ECF No. 322) and XY's Expert Todd Schoettelkotte (ECF No. 326) are granted in part and denied in part.

# I.  LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert

testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  Admission

of expert testimony is governed by Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may
> testify thereto in the form of an opinion or otherwise, if
> (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and
> methods reliably to the facts of the case.

Fed. R. Evid. 702.  The proponent of the expert testimony bears the burden of proving

the foundational requirements of Rule 702 by a preponderance of the evidence.  *United

States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

To qualify as an expert, the witness must possess such "knowledge, skill,

experience, training, or education" in the particular field as to make it appear that his or

her opinion would rest on a substantial foundation and would tend to aid the trier of fact

in its search for the truth.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928

(10th Cir. 2004).  To establish that the proffered testimony is reliable, the reasoning or

methodology underlying the testimony must be valid and must be properly applied to

the facts in issue.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–94

(1993) (listing four factors relevant to assessing reliability: (1) whether the theory has

been tested; (2) whether the theory has been subject to peer review and publication;

(3) the known or potential rate of error associated with the theory; and (4) whether the

theory has attained widespread or general acceptance).

While an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, but it is well-settled that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.

Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*

## II. XY'S MOTION TO EXCLUDE OPINIONS OF DR. DAVID DERAMUS

XY[1] moves to exclude Dr. DeRamus's opinions to the extent they are based on alleged anticompetitive conduct, as a result of the Court's Order Granting Summary Judgment on Trans Ova's Sherman Act counterclaims. (ECF No. 330.)

However, since XY's Motion was filed, the Court has permitted Trans Ova to reassert its substantive antitrust claims via a recoupment defense against XY, which—if successful—would allow Trans Ova to offset any damages XY might win on its claims.

---

[1] XY's Motion was brought by both XY and then-Third Party Defendant Inguran. (ECF No. 330 at 5.) However, all claims against Inguran have since been dismissed, and Inguran is no longer a party to this action. (ECF No. 393.) As such, the Court will discuss the motion as if brought solely by XY.

(ECF No. 376.)  This ruling precludes XY's argument that the challenged opinions relating to XY's alleged anticompetitive conduct are no longer relevant, because the Sherman Act claims have been revived against XY and may still be argued to the jury. (*Id.*)  The Court concludes that these opinions may be introduced in support of Trans Ova's recoupment defense.  Accordingly, XY's Motion is denied.

However, the Court cautions Trans Ova that Dr. DeRamus's testimony must still comport with the current status of this case with respect to Inguran.  The Court's recent Order on Motions *in Limine* indicated that evidence of Inguran's market power is admissible to provide context for an understanding of the relevant industry and XY's market power in that industry (ECF No. 396 at 7–8), but it is not independently relevant for purposes of demonstrating Inguran's own anticompetitive conduct because Inguran is no longer a third-party defendant in this case.  (*See* ECF No. 393.)  As such, Dr. DeRamus must limit his testimony accordingly.

### III.  TRANS OVA'S MOTION TO EXCLUDE OPINIONS OF DR. JAMES C.S. WOOD

Trans Ova moves to exclude portions of the expert report of Dr. Wood, XY's flow cytometry and cell structure expert, and to limit his testimony regarding interpretation of the License Agreement, willful infringement, and secondary considerations of non-obviousness.  (ECF No. 322.)

### A.    Interpretation of the License Agreement

Trans Ova argues that Dr. Wood impermissibly renders legal conclusions by interpreting the contract and opining that Trans Ova breached the License Agreement, and that he is unqualified to so opine because he is not a legal expert.  (*Id.* at 6–8.)

4

Among others, Dr. Wood's expert reports contain the following opinions:

28.   I have evaluated the facts discussed below and it is my opinion that Trans Ova has committed at least the following breaches of the License Agreement.

**A.      Failure to Disclose and Assign Improvements**

29.   Trans Ova has breached the License Agreement by failing to inform XY of Improvements that Trans Ova made to XY's technology and by failing to assign such Improvements to XY.

* * *

41.   It is my opinion that Trans Ova has also developed an Improvement in the use of sexed semen in embryo transfer procedures that it was required to disclose and assign to XY. Trans Ova's failure to do so constitutes a breach of the License Agreement.

* * *

**B.      Royalty Calculations**

43.   Trans Ova has also breached the License Agreement to the extent that they have failed to pay royalties on revenues from the on the use or sale of certain Licensed Products.

* * *

**C.      Using Non-Approved Sorters**

63.   Trans Ova has also breached the License Agreement by failing to purchase its sperm sorting MoFlo flow cytometers from an authorized supplier.  The first such breach occurred toward the end of 2008 and occurred repeatedly thereafter.

* * *

### D.   Third-Party Research with Owl Biomedical

75.   Trans Ova has also breached the License Agreement by attempting to develop alternative sperm sorting technology by using XY's patents and know-how to develop that alternative sperm sorting technology.

* * *

80.   Trans Ova therefore breached the License Agreement by failing to disclose this research and development activity related to XY's Technology.  I discuss the research and development activities in more detail below.

* * *

94.   Trans Ova's [sic] breached this confidentiality provision by demonstrating the MoFlo SX to Owl Biomedical and by conveying to Owl Biomedical information about the operation of the MoFlo SX and the results it would achieve. . . .  This information is related to XY's Technology under the License Agreement and should not have been disclosed.

* * *

96.   Moreover, Trans Ova breached the confidentiality provision of the License Agreement by publishing its sexed semen insemination schedule.

(ECF No. 321 at 4, 10, 12, 16–20.)  Many of these cited paragraphs, and occasionally

the sentences adjacent to them, also make references to particular terms of the

License Agreement, interpreting those terms in order to support the opinion that a

breach occurred.  (*Id.*)  Trans Ova argues that these opinions all exceed the scope of

Dr. Wood's expertise, as well as impermissibly offering legal conclusions and invading

the province of the jury.  (ECF No. 322.)

XY does not deny that Dr. Wood is not a legal expert and may not present expert

6

testimony in contract interpretation.  Instead, XY argues that Dr. Wood's opinions expressing particular interpretations of terms in the License Agreement merely provide context for his technical opinions by reading and reiterating the License Agreement's express language.  (*See* ECF No. 348 at 4–5, 7–8.)

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.  Nevertheless, an expert witness's testimony may not usurp the jury's fact-finding function.  *See Specht*, 853 F.2d at 808.  When adopting Rule 704, the drafters of the Federal Rules of Evidence provided guidance as to what is permissible expert testimony:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions.  Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.  They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. *Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural object of his bounty to formulate a rational scheme of distribution?" would be allowed.*

Fed. R. Evid. 704 advisory committee's note (emphasis added).  As exemplified by the advisory committee's sample question, there is a fine line between a technical opinion that touches on the essential elements of a legal analysis, which is admissible, and an opinion that applies the law to the facts and reaches a legal conclusion, which is not. The Court finds that Dr. Wood's opinions frequently cross that line.

Take, for example, one of Dr. Wood's opinions cited by XY in its Response:

> "In my opinion, Trans Ova's reverse sort and reverse sort
> media protocols constitute an Improvement under the terms
> of the License Agreement because *they were created—in
> whole or in part—with reference to sorting methods for
> which XY holds patents and to the semen preparation
> processes that XY has described in its own protocols.*"

(ECF No. 348 at 5–6 (quoting ECF No. 321 ¶ 33) (emphasis XY's).)  XY argues that this

opinion is not impermissible because Dr. Wood has merely read the plain language of

the License Agreement, which states that "Improvements" includes "all know-how,

processes, . . . or other information . . . based upon or derived from the Technology,"

which itself is defined as including XY's patents.  (*Id.* at 5 (quoting ECF No. 348-1

§§ 1.1, 1.7).)  XY ignores the fact that Dr. Wood has not only used his own

understanding of how to read these definitions, but has also applied this "plain

language" understanding of the legal terminology in the License Agreement to the facts,

in effect making a legal determination.

Notably, XY makes no attempt to defend Dr. Wood's numerous opinions, cited

above, that Trans Ova breached the License Agreement by failing to comply with

various provisions.  (*See generally* ECF No. 348.)  These are not only indisputably legal

conclusions, but are also precisely the conclusions XY asks the jury to reach; as such,

Dr. Wood's opinion that the contract was breached is the very definition of invasion of

the province of the jury.  *See Specht*, 853 F.2d at 808.

Therefore, the Court will not permit Dr. Wood to testify that Trans Ova breached

the License Agreement, nor will he be permitted to testify that, for example, "Trans

Ova's reverse sort and reverse sort media protocols constitute an Improvement under

the terms of the License Agreement."  (ECF No. 321 ¶ 33.)  However, Dr. Wood may

8

testify to the italicized portion of the same paragraph, namely that Trans Ova's reverse sort and reverse sort media protocols "were created—in whole or in part—with reference to sorting methods for which XY holds patents and to the semen preparation processes that XY has described in its own protocols." (*Id.*)  Furthermore, Dr. Wood may testify that, in his understanding rather than under the terms of the License Agreement, those protocols are an improvement on XY's technology.  (*See id.*)  Similarly, Dr. Wood may testify that "[t]he IVF Cycle involves multiple elements or components of XY's patents, protocols, and know-how," (ECF No. 348-2 ¶ 51), but he may *not* continue on to the rest of the sentence and opine that the IVF Cycle "thus constitutes a Licensed Product" under the License Agreement.  (*Id.*)  The distinction is narrow, but essential to preserving the jury's autonomy.  *See Specht*, 853 F.2d at 808.

In sum, the Court will not altogether exclude Dr. Wood's opinions regarding the provisions of the License Agreement, but he may not interpret the License Agreement or opine that it was breached.

Trans Ova raises an additional issue with respect to its arguments that Dr. Wood improperly interprets the License Agreement.  Trans Ova's Motion asserts that Dr. Wood improperly relied on parol evidence in interpreting the royalty terms in the License Agreement.  (ECF No. 322 at 10.)  XY responds that the challenged portion of Dr. Wood's opinion, which details certain communications between Trans Ova and XY personnel regarding royalties, "is merely background information . . . and nowhere in his technical analysis does Dr. Wood reference or draw upon this background information to arrive at his technical conclusions."  (ECF No. 348 at 9.)  As XY argues that the challenged subsection of Dr. Wood's report is merely "background information" that

9

provides no basis for his opinions, XY implicitly agrees that this portion of the report will not comprise a portion of Dr. Wood's expert testimony at trial.  As such, the Court need not enter an order excluding this portion of the report, and will hold XY to its representations that this subsection is not part of his technical opinion.

**B.   Willful Infringement**

Trans Ova seeks to preclude Dr. Wood from testifying that it willfully infringed the patents-in-suit, and also seeks to strike the portion of his report entitled "Willful Infringement."  (ECF No. 322 at 12–14.)  Willful infringement requires a two-step analysis, entailing an objective inquiry (whether an objectively high likelihood of infringement existed), and a subjective inquiry (whether the infringer knew or should have known of the high likelihood that it was infringing).  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  Trans Ova argues that the objective inquiry is a legal question for the Court, and the subjective inquiry is a question for the jury.  (ECF No. 322 at 12 (citing *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012)).)

Dr. Wood's expert report offers opinions on both prongs of the willful infringement analysis.  He states that "there was an objectively high risk that Trans Ova's continued practice of the asserted patents constituted infringement of a valid patent," and that "Trans Ova was also aware of, or should have been aware of," that objectively high risk.  (ECF No. 321 ¶¶ 157, 159.)  XY argues that Dr. Wood's opinion is supported by a technical analysis of the patents-in-suit covered by the License Agreement and the acts Trans Ova took that infringed each of XY's patents.  (ECF No. 348 at 14.)  This argument does not salvage the willful infringement opinion.  Despite

Dr. Wood's technical analysis, he may not invade either the Court's role or the jury's. As discussed above, Dr. Wood may not testify to legal conclusions, and thus may not opine as to the objectively high risk of infringement.  Nor may Dr. Wood opine that Trans Ova was aware, or should have been aware, of anything; he is not qualified to testify to Trans Ova's knowledge or intent, and would invade the jury's role in making that determination.

Because Dr. Wood's "Willful Infringement" analysis is improper expert testimony in multiple ways, the Court will preclude him from testifying as to any portion of it that applies the legal analysis for willful infringement.  Trans Ova's Motion is therefore granted in this respect.  This ruling does not, however, prevent Dr. Wood from testifying regarding the particular patents that are covered by the License Agreement, which is a non-legal analysis contained within that section of his report.  (ECF No. 321 ¶ 158.)  As such, the Court declines to strike this portion of the report.

**C.     Secondary Considerations of Non-Obviousness**

Trans Ova moves to preclude Dr. Wood from testifying regarding "Secondary Considerations of Non-Obviousness," a section of his rebuttal report.  (ECF No. 322 at 14–15.)  Trans Ova argues that an obviousness analysis requires establishing a nexus between the factor allegedly indicating non-obviousness and a claimed feature of a particular patent.  (*Id.*)  According to Trans Ova, Dr. Wood's opinion discusses the patents only generally, and thus fails to establish the necessary nexus.  (*Id.*)

The Court has reviewed the relevant portion of the report and concludes that these opinions need not be excluded.  Dr. Wood's non-obviousness opinion makes reference to particular patents and their features, tying them to claims in the patents-in-

suit. (ECF No. 321-1 ¶¶ 185–87.) To the extent that Dr. Wood's opinion insufficiently specifies the relevant claims to establish the required nexus, Trans Ova is free to cross-examine him. *See* Fed. R. Evid. 702 advisory committee's note ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also Lovato v. Burlington N. & Santa Fe Ry. Co.*, 2002 WL 1424599, at *4 (D. Colo. June 24, 2002) ("Whatever shortcomings [the defendant] may perceive in [the expert's] academic or professional background are more properly addressed in cross-examination. [The defendant's] challenge to [his] qualifications go to the weight of the witness's testimony, and not to its admissibility.").

As such, the Court denies this aspect of Trans Ova's Motion.

## IV. TRANS OVA'S MOTION TO EXCLUDE OPINIONS OF TODD SCHOETTELKOTTE

Trans Ova argues that Mr. Schoettelkotte, XY's damages and valuation expert, impermissibly renders legal conclusions by interpreting the contract and opining that Trans Ova breached the License Agreement, and further argues that he is unqualified to so opine because he is not a legal expert. (ECF No. 326 at 4–7.)

XY responds that Mr. Schoettelkotte's opinions as to breach were merely assumptions he made for the purposes of articulating his understanding of the scope and resulting damages from the breaches XY has alleged. (ECF No. 344 at 10.) Trans Ova does not dispute that Mr. Schoettelkotte's report contains the statement, "For purposes of this report, I have been asked to assume that the Defendant breached its Commercial License Agreement with XY and that the asserted claims of the patents at issue are infringed by the Defendant, not unenforceable, and not invalid." (ECF No.

12

325-1 ¶ 3).  Trans Ova also agrees that an expert analysis that merely *assumes* breach is permissible, as "'it is necessarily the role of a damages expert to offer an opinion based only on assumptions because . . . [u]ntil a jury has found facts to resolve the factual issues presented to them, an expert has nothing other than assumptions on which economic analysis may be based.'"  (ECF No. 326 at 5 n.4 (quoting *Rowe v. DPI Specialty Foods, Inc.*, 2015 WL 4949097, at *5 (D. Utah Aug. 19, 2015)).)  However, Trans Ova argues that "Schoettelkotte's single statement in his Report that he assumed breach was superficial," and that Mr. Schoettelkotte in fact opines repeatedly that Trans Ova did breach the License Agreement.  (ECF No. 361 at 6.)

The Court disagrees that Mr. Schoettelkotte's reference to his assumption of breach was merely "superficial."  His expert report contains references to the "alleged breach" (ECF No. 325-1 ¶ 33) and to his "understand[ing]" that a breach occurred based on XY's allegations (*id.* ¶ 31).  However, the report also contains the statement, "based on my understanding of the Agreement, it is my opinion that Trans Ova was in breach of Section 2.l(a) as early as 2006."  (*Id.* ¶ 35.)  Here, Mr. Schoettelkotte directly opines that a breach occurred, which (for the same reasons discussed above with respect to Dr. Wood's opinions) invades the province of the jury and expresses an impermissible legal opinion.  Mr. Schoettelkotte will therefore be precluded from expressing this opinion, or any other opinion—as opposed to his understanding or assumption—that a breach occurred.[2]

---

[2] XY appears to agree to this result, to the extent that the Court is concerned about Mr. Schoettelkotte's impermissible legal opinions, in a footnote in its Response.  (ECF No. 344 at 10 n.13.)

The Court is further troubled by a statement Mr. Schoettelkotte made in his deposition:

> As part of my review, I have identified certain components of my analysis that may assist the trier of fact in determining whether the contract was, in fact, breached. In addition, I've also calculated damages based upon that breach if the trier of fact determines that there has been a breach of contract in this case.

(Schoettelkotte Dep. (ECF No. 325) p. 32.)  XY has apparently relied on the second sentence of this quotation rather than the first, which contradicts XY's assertions in its Response to Trans Ova's Motion that Mr. Schoettelkotte "merely discusses his understandings of the terms of the Agreement and the parties' conduct in order to testify about the scope and resulting damages from the breaches XY has alleged." (ECF No. 344 at 10.)  To the extent that Mr. Schoettelkotte's testimony remains within the bounds delineated by XY in its brief, that testimony is admissible.  However, Mr. Schoettelkotte may not opine as to "whether the contract was, in fact, breached," nor may he interpret the meaning of the contract's terms.

Trans Ova's Motion argues that Mr. Schoettelkotte improperly interprets the License Agreement when he states that it is his understanding that "Trans Ova is prohibited [under the sublicensing clause] from allowing end users to sell or offer for sale Licensed Products without further consent of XY," or that "then existing customers" means "the customer who brought Trans Ova the bull," or that the "standard size" for straws of sorted sperm was 2 million cells per straw.  (ECF No. 326 at 8–11.)  The Court reads these opinions as stating assumptions or data on which Mr. Schoettelkotte relied in calculating the scope of damages, not as his own claim to definitive

14

interpretations of the License Agreement.  XY argues as much in its Response.  (ECF No. 344 at 10–12.)  The Court will hold XY to this representation of Mr. Schoettelkotte's opinions, and as such, they will not be excluded.  Mr. Schoettelkotte will be subject to cross-examination by Trans Ova as to the basis, or lack thereof, for his understanding of these terms.

Similarly, the Court rejects Trans Ova's argument that Mr. Schoettelkotte should not testify as to other alleged breaches, because these are once again assumed breaches that Mr. Schoettelkotte must articulate in order to describe the basis for his damages calculations.  (*See* ECF No. 326 at 12–15.)  Nevertheless, as with his other opinions regarding breach, Mr. Schoettelkotte will not be permitted to testify that any particular act *constituted* a breach of the License Agreement, but instead that he *assumed* such a breach in formulating his opinions.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.   XY's Motion to Exclude Expert Testimony (ECF No. 330) is DENIED;

2.   Trans Ova's Motion to Exclude Portions of the Expert Reports and to Limit Testimony of XY, LLC's Expert Dr. James C.S. Wood (ECF No. 322) is GRANTED IN PART and DENIED IN PART;

3.   Trans Ova's Motion to Exclude and Limit the Testimony and Report of XY, LLC's Damage Expert Todd Schoettelkotte (ECF No. 326) is GRANTED IN PART and DENIED IN PART; and

4.   Dr. David DeRamus, Dr. James C.S. Wood, and Todd Schoettelkotte may testify at trial as outlined in and consistent with this Order.

15

Dated this 8th day of January, 2016.

BY THE COURT:

William J. Martinez
United States District Judge