**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-0876-WJM-NYW

XY, LLC,

     Plaintiff / Counterclaim Defendant,

v.

TRANS OVA GENETICS, LC,

     Defendant / Counterclaim Plaintiff.

---

## ORDER ON POST-TRIAL MOTIONS

---

Plaintiff and Counterclaim Defendant XY, LLC ("XY") brought this case against Defendant and Counterclaim Plaintiff Trans Ova Genetics, LC ("Trans Ova") arising out of disputes over a License Agreement which had permitted Trans Ova to use XY's patented technology. (ECF No. 301.) The Court held a three-week jury trial commencing on January 25, 2016, and the jury rendered a verdict on February 12, 2016. (ECF Nos. 419, 461.)

The jury found that XY breached the License Agreement (the "Agreement") and the duty of good faith and fair dealing because it had not proven it had the right to terminate the Agreement in November 2007, and awarded Trans Ova $528,000 in damages for that breach. (ECF No. 461 at 1–2.) The jury also found that Trans Ova had committed a material, uncured breach of the Agreement prior to April 16, 2009, such that the Agreement terminated on that date, and awarded XY $1,481,000 in damages for that breach. (*Id.*) The jury found that Trans Ova had infringed all claims

of the ten patents in suit, that Trans Ova's infringement was willful, and that Trans Ova had not proven that any of the patent claims was invalid or unenforceable.  (*Id.* at 3–9.) Consequently, the jury awarded XY $4,585,000 in patent infringement damages.  (*Id.* at 9.)  The jury also found that XY had unclean hands, barring claims for unjust enrichment and injunctive relief.  (*Id.*)  Finally, the jury rejected Trans Ova's recoupment claim under the antitrust laws, finding that Trans Ova had not proven that the semen sorting technology market was a relevant market or that XY had a specific intent to monopolize that market.  (*Id.* at 10–12.)  The Court has yet to enter Final Judgment.

Before the Court are eight post-trial motions:

(1) Trans Ova's Renewed Motion for Judgment as a Matter of Law Under Rule 50(b) or, in the Alternative, Motion for a New Trial Under Rule 59(a) or, in the Alternative, Motion to Alter or Amend a Judgment Under Rule 59(e) ("Breach Motion") (ECF No. 473);

(2) Trans Ova's Motion to Alter or Amend a Judgment Under Rule 59(e) ("Willful Infringement Motion") (ECF No. 477);

(3) Trans Ova's Motion for a New Trial Under Rule 59(a) ("Relevant Market Motion") (ECF No. 479);

(4) Trans Ova's Motion for a New Trial Under Rule 59(a) on the Issue of Invalidity ("Invalidity Motion") (ECF No. 480) (together with the Relevant Market Motion, "New Trial Motions");

(5) XY's Motion to Declare this Case Exceptional Pursuant to 35 U.S.C. § 285 and to Award Attorneys' Fees ("Fee Motion") (ECF No. 467);

(6) XY's Motion for Award of Enhanced Damages for Patent Infringement Under 35 U.S.C. § 284 ("Damages Motion") (ECF No. 468);

2

(7) XY's Motion to Set an Ongoing Royalty Rate ("Royalty Motion") (ECF No. 471); and

(8) XY's Motion for Prejudgment Interest ("Interest Motion") (ECF No. 472).

For the reasons set forth below, the Willful Infringement Motion is granted, the Royalty

Motion and the Interest Motion are granted in part, and the remaining motions are

denied.

## I.  TRANS OVA'S BREACH MOTION

Trans Ova's Breach Motion seeks to reconcile the two breaches of contract

found in the jury's Verdict with a ruling that XY's breach rendered Trans Ova's breach

legally inoperative.  (ECF No. 473.)  Trans Ova seeks judgment as a matter of law

under Federal Rule of Civil Procedure 50(b), or in the alternative, an amended

judgment or new trial under Rule 59.  (*Id.*)

## A.    Legal Standards

In evaluating a motion brought under Rule 50(b), the Court must examine all the

evidence admitted at trial, construe that evidence and the inferences from it in the light

most favorable to the non-moving party, and refrain from making credibility

determinations and weighing the evidence.  *See Tyler v. RE/MAX Mountain States*, 232

F.3d 808, 812 (10th Cir. 2000).  Judgment as a matter of law is appropriate "only if the

evidence points but one way and is susceptible to no reasonable inferences which may

support the opposing party's position."  *Finley v. United States*, 82 F.3d 966, 968 (10th

Cir. 1996).

Alternatively, Defendant seeks a new trial under Rule 59(a)(1), which permits the

Court to order a new trial "for any of the reasons for which a new trial has heretofore

been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1).  Such a motion can be granted based on any error so long as "the district court concludes the 'claimed error substantially and adversely' affected the party's rights." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (quoting *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998)).

Defendant's next alternative request to amend the judgment is brought under Rule 59(e).  "Rule [59(e)] was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982) (internal quotation marks omitted).  Accordingly, the Court may amend the judgment in its discretion where there has been an intervening change in the controlling law, new evidence that was previously unavailable has come to light, or the Court sees a need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

Where a jury's verdict appears internally inconsistent, "[t]rial courts have a duty to attempt to reconcile juries' answers to special verdict questions in order to avoid the need for retrials." *Palmer v. City of Monticello*, 31 F.3d 1499, 1505 (10th Cir. 1994) (citing *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963)).  The obligation to harmonize the jury's findings if possible arises from the Seventh Amendment.  *See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962).  "If there is any view of the case which makes the answers consistent, the case must be resolved in that way." *Palmer*, 31 F.3d at 1505.  The Court may find fatal inconsistency

4

only where the verdict is completely irreconcilable. *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416, 1424–25 (10th Cir. 1986). "In determining whether there is inconsistency in the jury's findings, the findings are to be construed in the light of the surrounding circumstances and in connection with the pleadings, instructions, and issues submitted." *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 309 n.7 (10th Cir. 1985) (citing 9 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2510 (1971)); *see also* A. Miller, Fed. Prac. & Proc. Civ. §§ 2504.1, 2510 (3d ed., updated Apr. 2015).

**B.   Analysis**

Trans Ova argues that the jury's Verdict, which found breaches of contract by both parties and assessed damages against each party, was inconsistent because Trans Ova's duties under the Agreement should have been deemed suspended after XY's material breach. (ECF No. 473.) Trans Ova contends that, therefore, the jury's finding that Trans Ova materially breached the Agreement is "legally inoperative," and that the Court should strike the jury's award of contract damages to XY and hold that the Agreement did not terminate, but remained in effect. (*Id.*) Consequently, Trans Ova argues that the Court should strike the jury's award of infringement damages to XY, because Trans Ova could not have infringed while under a valid license, and that Trans Ova's contract damages should be increased due to the jury's "erroneous assumption" that the Agreement terminated in 2009. (*Id.* at 10–13.)

These arguments are all premised on the preliminary question of whether XY's breach was material. This is so because, as the jury was instructed, "a material breach by one party excuses performance by the other party to the contract." (Jury Instructions

(ECF Nos. 455, 456, 457) p. 30.)  XY disputes whether its breach was material, and, as both parties recognize, the Verdict Form did not require the jury to make that determination.[1]  (*See* ECF No. 461 at 1, 2.)

Colorado courts have adopted the analysis in the Restatement (Second) of Contracts in determining whether a breach of contract is material.  *DBA Enters., Inc. v. Findlay*, 923 P.2d 298, 301 (Colo. App. 1996) (citing *Converse v. Zinke*, 635 P.2d 882, 887 (Colo. 1981)).  The Restatement provides the following factors to be considered in determining materiality of a breach:

> (a)   the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b)   the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c)   the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d)   the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> (e)   the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981).  "Whether a breach is material is a question of fact.  A material term goes to the root of the matter or essence of the

---

[1] XY also argues that, by failing to object to the absence of the word "material" in Verdict Form Question 5 regarding XY's breach, Trans Ova has waived such objection and cannot now seek relief on this issue.  (ECF No. 486 at 8–10.)  The Court disagrees for two reasons.  First, while Trans Ova did not explicitly object to the wording of Question 5, Trans Ova did raise the issue of a potential material breach by XY and consequent suspension of Trans Ova's duties under the Agreement, both at the charging conference and after the Verdict was read.  (*See* Trial Transcript ("Tr.") at 3343, 3564.)  Second, an allegedly inconsistent verdict may be challenged after trial without prior objection or Rule 50(a) Motion on the issue.  *See Garcia*, 768 F.2d at 309 n.7.  Thus, this issue is properly before the Court on Trans Ova's post-trial Breach Motion.

contract." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005) (citations omitted).

Considering the evidence presented at trial about the Agreement at issue here, and the jury's determination that XY breached the Agreement and its duty of good faith and fair dealing by attempting to terminate the Agreement, the Court finds that a reasonable jury must have concluded that XY's breach was necessarily material.  By improperly treating the Agreement as terminated, XY denied Trans Ova its legal authorization to continue to practice its patents, which the evidence showed was the essence of the Agreement from Trans Ova's perspective.  XY's actions thus deprived Trans Ova of the benefit it reasonably expected from the Agreement, and as the jury found, thereby breached the duty of good faith and fair dealing.  *See* Restatement (Second) of Contracts § 241(a), (e).  (*See also* ECF No. 461 at 2.)  The Court concludes that, under Colorado law, XY's attempted termination of the Agreement constitutes a material breach.

Trans Ova argues that, if XY's breach was material, Trans Ova's duties under the Agreement were thereafter suspended, invalidating the jury's finding that Trans Ova breached the Agreement.  However, Trans Ova assumes that XY's breach must have occurred first.  The Verdict need not be read that way.  In Question 1, the jury found that XY had failed to prove that it had the right to terminate the Agreement in November 2007, and in Question 5, the jury found that XY's attempt to terminate the Agreement breached both the Agreement and the duty of good faith and fair dealing.  (ECF No. 461 at 1–2.)  In Question 2, the jury found that Trans Ova materially breached the Agreement "at any time before April 16, 2009, and failed to cure the breach by that

date." (*Id.* at 1.)  A plain reading of the Verdict permits two readings: Trans Ova's breach may have occurred either before or after XY's breach, as long as it occurred prior to April 16, 2009.

The Court further notes that the jury was instructed as to the effect of a material breach on the other party's contractual duties.  (Jury Instructions p. 30.)  The Court must presume that the jury followed its instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Since the jury awarded XY damages for Trans Ova's breach, the jury must have concluded that such breach was not excused by any prior material breach by XY.  Accordingly, the Court concludes that the Verdict can be harmonized by finding that Trans Ova's material breach predated XY's, but it was not cured prior to April 16, 2009.  *Cf. Palmer*, 31 F.3d at 1505.

Trans Ova objects to this interpretation, arguing that "there is zero evidence supporting any such hypothetical finding.  On the contrary, all the evidence of record points to XY as having breached the License first."  (ECF No. 490 at 6.)  The Court disagrees; the evidence adduced at trial supports this interpretation of the jury's findings.  For example, XY presented evidence that Trans Ova breached the Agreement by underpaying royalties for years prior to XY's breach, due to Trans Ova's erroneous belief that the Agreement was modified after an oral agreement with Dr. Mervyn Jacobson.  (*See* Tr. at 1280–85.)  XY also presented evidence that, prior to November 2007, Trans Ova developed reverse sort protocols which constitued improvements to XY's patented technology, but did not disclose them or grant them back to XY pursuant to the Agreement.  (*Id.* at 571–76.)  Moreover, the evidence at trial showed that XY was not aware of any of these breaches of the Agreement until after it

8

began legal proceedings in 2012.  As such, these breaches by Trans Ova did not excuse XY's breach in 2007, and were within the statute of limitations for XY's breach of contract claim.  (*See* ECF No. 267 (holding that XY's breach of contract claim is barred to the extent it accrued before March 6, 2009); Jury Instructions p. 29 (instructing the jury as to the discovery rule for accrual).)

Trans Ova also argues that, if the Court interprets the verdict by finding that Trans Ova breached the Agreement prior to November 2007 and the breach was curable under the terms of the Agreement § 5.1.2, that breach could not have caused the Agreement to terminate because the Agreement provides for notice and an opportunity to cure.  (ECF No. 490 at 7–8.)  This argument improperly conflates the Termination provision and Renewal provision of the Agreement.  Section 5.1.2 of the Agreement gives XY the right to terminate the Agreement upon written notice of a breach and after a thirty-day cure period, without waiting for the natural end of the Agreement on April 16, 2009; in contrast, § 2.4 of the Agreement provides that the Agreement will automatically renew for an additional five-year period "[p]rovided that the Licensee is not in material breach."  (*See* Trial Ex. 17.)  The Court agrees that under § 5.1.2, XY would not have been authorized to terminate the Agreement based on either of the curable breaches cited above without providing notice and an opportunity to cure.  But XY's inability to terminate the Agreement early does not contractually preclude Trans Ova's uncured, material breaches from causing the Agreement to fail to automatically renew under § 2.4.  The Court therefore rejects Trans Ova's argument that the lack of prior notice necessarily means that the Agreement must have automatically renewed.

The Court finds that the Verdict can be harmonized by interpreting the jury's findings as follows: Trans Ova materially breached the Agreement by, *inter alia*, underpaying royalties, or failing to disclose and grant back to XY certain technology improvements, or both, prior to November 2007; XY materially breached the Agreement by improperly attempting to terminate it in November 2007; and both parties are entitled to damages for those breaches of contract, as awarded in the Verdict. (*See* ECF No. 461 at 1–2.) Because the amount of Trans Ova's damages award was smaller than XY's, the Court will treat Trans Ova's damages as an offset to the damages awarded to XY, and enter judgment for XY in the  amount of $953,000.

As the Court has found that the jury properly determined that the Agreement terminated on April 16, 2009, the Court rejects Trans Ova's argument that it is entitled to additional damages due to any subsequent breaches of the Agreement after that date. (*See* ECF No. 473 at 12–13.)

In sum, the Court finds no clear error or fatal inconsistency in the Verdict that warrants judgment as a matter of law under Rule 50(b) or post-trial relief under Rule 59. Defendant's Breach Motion is therefore denied in its entirety.

## II. TRANS OVA'S WILLFUL INFRINGEMENT MOTION

Trans Ova's Willful Infringement Motion seeks relief under Rule 59(e) based on the jury's finding, "by clear and convincing evidence[,] that Trans Ova's infringement was willful." (ECF No. 461 at 3.) Rule 59(e) permits the Court to correct manifest or clear legal error. *Servants of Paraclete*, 204 F.3d at 1012.

As a preliminary matter, XY contests whether Trans Ova may properly seek this

relief under Rule 59(e), because Trans Ova did not seek such relief in its motion under Rule 50(a) during trial.  (ECF No. 488 at 3–4.)  The Court disagrees that the relief sought should have been brought as a Rule 50 motion.  As Trans Ova clarifies in its Reply in support of the Willful Infringement Motion, Trans Ova's argument is not a challenge to the sufficiency of XY's evidence at trial, but rather an argument that the jury's willful infringement finding was clearly erroneous as a matter of law.  (ECF No. 495 at 1–2.)  As discussed below, the analysis of willful infringement requires an objective determination of the reasonableness of Trans Ova's defenses, which could not have been performed when Trans Ova made its Rule 50(a) Motion after the close of XY's case in chief.  The Court therefore properly considers Trans Ova's Willful Infringement Motion under Rule 59(e).

Willful infringement of a patent requires a two-part showing: (1) "the infringer acted despite an objectively high likelihood that its actions constitued infringement of a valid patent," and (2) that objectively high likelihood of infringement "was either known or so obvious that it should have been known to the accused infringer."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (referring to first prong as "a showing of objective recklessness").  The first, "'objective' prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement." *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010); *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336–37 (Fed. Cir. 2009) (affirming district court's entry of judgment as a matter of law of no willfulness where defendant "presented a substantial question" of noninfringement, despite jury's finding of infringement).

11

In 2015, the Federal Circuit held that, while the factual questions of willful infringement may properly be sent to the jury, the district court reviews the question of objective recklessness *de novo* as a matter of law.  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 776 F.3d 837, 844 (Fed. Cir. 2015) ("the judge remains the final arbiter of whether the defense was reasonable"), *cert. denied*, 136 S. Ct. 189 (2015); *contra Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1354 (Fed. Cir. 1998) (holding previously that "[w]hether infringement was willful is a question of fact, and we will not reverse a jury determination on this issue unless it was unsupported by substantial evidence").  Under *Bard*, on review of Trans Ova's Willful Infringement Motion, the Court must determine *de novo* whether the evidence at trial supports the jury's finding that Trans Ova's invalidity defenses were objectively unreasonable, or alternatively, whether they presented a "substantial question."  *See DePuy Spine*, 567 F.3d at 1336.

Trans Ova presents three arguments that it was not objectively reckless: (1) Trans Ova acted in good faith in believing the Agreement was still in effect; (2) Trans Ova reasonably relied on the advice of counsel as to the invalidity of the four nozzle patents; and (3) Trans Ova's evidence of invalidity as to all ten of the patents-in-suit presented a substantial question of invalidity.  (ECF No. 477 at 4–8.)  Because the Court is persuaded by Trans Ova's third argument, it need not discuss the other two.

At trial, Trans Ova presented evidence of invalidity due to obviousness as to all ten of the patents-in-suit, as well as anticipation evidence as to six of the ten patents. The Court denied XY's mid-trial Rule 50(a) Motion as to the majority of Trans Ova's

invalidity defenses, granting it only as to the anticipation of two of the patents.  (ECF No. 447 at 3.)  In so ruling, the Court found that Trans Ova had presented sufficient evidence for a reasonable jury to find in its favor on its claim that each of the patents-in-suit was invalid as obvious.  Trans Ova's invalidity arguments, though ultimately found unpersuasive by the jury, were supported by expert testimony from Dr. John Hasler and Dr. J. Paul Robinson who opined as to each claim and each patent at issue.

XY argues that Trans Ova's anticipation arguments were "hopelessly weak," but cites only the same evidence on which the Court relied to grant XY's Rule 50(a) Motion as to the '687 and '921 patents, without discussing Trans Ova's evidence of anticipation of the '425, '053, '867, and '860 patents that actually went to the jury.  (*See* ECF No. 488 at 13.)  XY also contends that Trans Ova's obviousness defense was "objectively unreasonable," noting that "[e]xamples abound," but cites only its argument made in its Rule 50(a) Motion that Dr. Robinson failed to consider objective considerations of non-obviousness—the same argument the Court rejected in denying XY's Rule 50(a) Motion.  (*Id.* at 14.)  XY also mentions that the Shrimpton patent was discussed during prosecution of XY's freezing patents; but, as the Court held in ruling on the Rule 50(a) Motion, Trans Ova presented evidence that, while Shrimpton's sex-sorting technology was arguably inoperable, it would be obvious to combine the freezing component in Shrimpton with the sex-sorting technology in the Seidel reference.  (*See id.* at 13.) Similarly, XY cites the Merton article, which was before the Patent Office on the *in vitro* fertilization or "IVF" patents.  (*Id.*)  At trial, the parties presented evidence that the '687 and '921 patents were initially rejected by the patent examiner based on the Merton article, which was only reversed based on a subsequent declaration by an XY

13

employee, Dr. David Cran.  (Tr. at 2281–85.)  Dr. Hasler testified that Dr. Cran's declaration was biased due to his employment with XY, and the jury could have found that these patents' mixed history at least suggested a reasonable possibility of invalidity.  (*Id.* at 2285.)  The Court finds none of these contentions persuasive in demonstrating that Trans Ova was objectively reckless in relying on its invalidity defense.

This finding is further supported by the proceedings brought with respect to the '920 and '425 patents before the Patent Trial and Appeal Board, which resulted in a finding of invalidity as to the '920 patent, and a hearing as to the possible invalidity of the '425 patent.  (*See* ECF No. 411.)  While this evidence was not before the jury, it bolsters the Court's present finding that Trans Ova's invalidity defenses met the minimal standard of objective reasonableness, at least as to some of XY's patents.  (*Cf.* ECF No. 396 at 4.)

On review of the evidence presented at trial, the Court finds that Trans Ova's invalidity defense was not objectively unreasonable, and though the jury ultimately rejected it, Trans Ova presented a substantial question of invalidity.  Consequently, *Seagate*'s objective recklessness prong has not been met.  *See Spine Solutions*, 620 F.3d at 1319.

Ordinarily, the Court would be reticent to disturb a jury's factual findings on a post-trial motion.  However, the Federal Circuit has made clear that the Court's role in reviewing willful infringement is to determine *de novo* whether the infringer was objectively reckless in relying on its invalidity defense.  *See Bard*, 776 F.3d at 844.  The

Court finds that Trans Ova's invalidity defense was objectively reasonable, as it presented a substantial question of invalidity, and therefore Trans Ova cannot have willfully infringed under the Federal Circuit's definition of that term.  *See id.*

The Court therefore grants Trans Ova's Willful Infringement Motion, and must vacate the jury's finding that Trans Ova's infringement was willful.  (*See* ECF No. 461 at 3.)

### III.  TRANS OVA'S NEW TRIAL MOTIONS

Trans Ova brings two New Trial Motions: (1) the Relevant Market Motion, which challenges the jury's finding that the sperm sorting technology market was not a relevant market; and (2) the Invalidity Motion, which challenges the jury's rejection of Trans Ova's invalidity defense as to all of the claims of each of the patents-in-suit. (ECF Nos. 479, 480.)  Trans Ova contends that these findings were against the weight of the evidence at trial, and that therefore a new trial is warranted on each of these issues.

"If 'a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence.'"  *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)).

Each of Trans Ova's New Trial Motions painstakingly recites the evidence Trans Ova presented in its favor and the reasons why the contrary evidence presented by XY was not credible, in order to support Trans Ova's argument that no reasonable jury

could have found as this jury did in its Verdict.  The Court finds that both New Trial

Motions fail to meet the high burden under Rule 59(a) for a new trial, as the Verdict on

both of these issues was not overwhelmingly against the weight of the evidence.

In the Relevant Market Motion, Trans Ova principally argues that XY's expert, Dr.

Barry Harris, was not credible when he testified that the sorting technology market is

not a separate relevant market, but is part of the overall market for both conventional

and sorted semen.  (ECF No. 479 at 6–7.)  Dr. Harris testified that cross-elasticity of

demand between conventional and sorted semen, as well as substitution rates and

pricing competition between the two, suggest that there is an overall semen market as

opposed to a separate market for sorted semen, and that the technology market is an

"upstream" component of the "downstream" product market.  (*See* Tr. at 2808–10.)

Trans Ova disputes this testimony, arguing that it is not credible in the face of the

evidence that Inguran sells sorted semen at two to three times the price of conventional

semen, and that the technology market must necessarily have been a relevant market

because no competing semen sorting technology exists.  (ECF No. 479 at 4–7.)

As to the Invalidity Motion, Trans Ova reiterates the testimony of its patent

experts, Dr. Hasler and Dr. Robinson, and argues that each of the patents-in-suit is

obvious or anticipated.  (ECF No. 480.)  Trans Ova then discusses the contrary

testimony of XY's expert, Dr. James Wood, contending that he lacks relevant expertise

to opine on validity of the patents, and that his analysis was flawed because he misread

many of the prior art references.  (*Id.* at 10–14.)  Trans Ova does not explain why it

stipulated to the Court qualifying Dr. Wood as an expert in the areas of flow cytometry

technology, cellular biology, and the subject matter of the asserted patents.  (*See* Tr. at

727.)  Trans Ova's arguments point to a classic battle of the experts with respect to invalidity opinions, rather than an indication that the overwhelming weight of the evidence leans but one way.

In both New Trial Motions, Trans Ova asks the Court to reweigh the evidence and reevaluate Dr. Harris's and Dr. Wood's credibility.  But the jury holds "the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."  *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) (internal quotation marks omitted).  The jury was presented with competing evidence from both parties on invalidity and the relevant market, and Trans Ova has failed to show that the evidence that favored XY was "clearly, decidedly, or overwhelmingly" outweighed by the evidence that favored Trans Ova.  *M.D. Mark*, 565 F.3d at 762.

The Court concludes that Trans Ova has failed to meet the high burden under Rule 59(a) to warrant a new trial on the issues of relevant market and patent invalidity. Accordingly, the Court denies both New Trial Motions.

## IV.  XY'S FEE MOTION

XY's Fee Motion requests that the Court declare this case "exceptional" pursuant to 35 U.S.C. § 285, and award XY attorneys' fees for the patent portion of the case. (ECF No. 467.)

Section 285 states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  The Supreme Court has clarified that "an

'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  The question of whether a case is exceptional is evaluated case-by-case, "considering the totality of the circumstances," and is within the trial court's discretion. *Id.*

XY raises three arguments that this case is exceptional: (1) Trans Ova's willful infringement supports an award of fees under § 285; (2) Trans Ova's patent invalidity and unenforceability arguments were completely meritless; and (3) Trans Ova's position that it still had a license to practice XY's patents because the Agreement was never terminated was unreasonable given its numerous breaches of the Agreement which caused it to terminate in 2009.  (ECF No 467.)  As to the willful infringement argument, the Court has already discussed this issue above in Part II, and vacated the jury's finding that Trans Ova willfully infringed; thus, this finding does not render this case exceptional.[2]  As to Trans Ova's invalidity and unenforceability arguments, the Court has discussed the objective reasonableness of Trans Ova's invalidity defense above in

---

[2] Even if the Court had not vacated the willful infringement finding, the Court would still deny XY's Fee Motion.  While "[a]n express finding of willful infringement is a sufficient basis for classifying a case as 'exceptional,'" and the Court would accordingly find this case to be exceptional if the jury's willfulness finding remained intact, "even an exceptional case does not require in all circumstances the award of attorney fees." *Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990) (internal quotation marks omitted).  In *Modine*, the district court denied the plaintiff patentee's fee motion despite finding that the case was exceptional due to willful infringement, because the defendant raised a substantial challenge to the patent and brought its claims in good faith, and because "an award of fees would thwart efforts to challenge the validity of patents believed in good faith to be invalid." *Modine Mfg. Co. v. Allen Grp., Inc.*, 1989 WL 205782, at *16 (N.D. Cal. Nov. 30, 1989).  The Federal Circuit affirmed. 917 F.2d at 543.  As the Court has found Trans Ova's invalidity defenses to be both reasonable and brought in good faith, the same reasoning would apply here.

Part II, and finds that its claims of invalidity and unenforceability were brought in good faith.  In addition to the evidence of invalidity discussed above, in support of its inequitable conduct defense Trans Ova presented the testimony of John Doll and Nicholas Godici, both of whom testified that the sheer number of references submitted with XY's patents in prosecution were well beyond anything they had seen in their long experience as patent examiners.  (Tr. at 2011, 3226.)  The Court found Mr. Doll's and Mr. Godici's testimony persuasive and rejects XY's assertion that the inequitable conduct defense was completely meritless.  As such, this argument is also insufficient to render this case exceptional.

As to XY's third argument, the Court disagrees that it was unreasonable of Trans Ova to believe it continued to have a valid license, at least until April 16, 2009.  Indeed, the jury ultimately found that XY's attempt to terminate the Agreement was improper, and the Agreement therefore continued in place until that date.  (*See* ECF No. 461.) While it may have been less reasonable for Trans Ova to continue to believe the Agreement persisted after its negotiations with XY for an amended license failed, and after it began seeking alternative technologies with Owl Biomedical, the Court rejects XY's contention that Trans Ova's belief that the Agreement remained in effect was completely untenable so as to render this case exceptional under § 285.

The purpose of an award of attorneys' fees for an exceptional case under § 285 "is to compensate a defendant for attorneys' fees it should not have been forced to incur."  *Kilopass Technology, Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013).  That is, where the infringing party litigated in bad faith or willfully infringed, the Court may award fees as a sanction for such conduct.  Here, Trans Ova introduced

19

evidence to support its litigation positions, though it was ultimately insufficient to persuade the jury.  The parties litigated vigorously, but in good faith.

Considering the totality of the circumstances and the law and facts of this case, *see Octane Fitness*, 134 S. Ct. at 1756, the Court finds that this is not an exceptional case under § 285, and therefore concludes that an award of attorneys' fees under that statute is not appropriate in this case.  XY's Fee Motion is therefore denied.

## V.  XY'S DAMAGES MOTION

XY's Damages Motion seeks treble damages pursuant to 35 U.S.C. § 284 based on the jury's finding of willful infringement.  (ECF No. 468.)  As discussed above in Part II, the Court has vacated that finding.  Because "[a] finding of willful infringement is a prerequisite to the award of enhanced damages," *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 858 (Fed. Cir. 2010), the Court finds no basis on which to award enhanced damages.  *See Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996) (detailing two-step analysis of first determining "whether an infringer is guilty of conduct upon which increased damages may be based . . . [which] must include some degree of culpability," and then considering whether to increase damages based on the totality of the circumstances).  This is reason sufficient to deny XY's Damages Motion.

However, even if the Court had not vacated the jury's willful infringement finding, the Court would still deny XY's request for enhanced damages based on the totality of the circumstances in this case.  Indeed, just as a determination of willful infringement does not require an award of attorneys' fees, neither does it mandate the award of an enhanced penalty.  *See Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1365

(Fed. Cir. 1998). Rather, courts must consider several factors, including whether the infringer had a good faith belief that the patent was invalid, whether the infringer behaved reasonably as a party to the litigation, whether the infringer attempted to conceal its infringement, and the closeness of the case. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995).

In this case, as discussed above in Part II, Trans Ova had a good faith belief in the patents' invalidity. The parties each litigated vigorously, but reasonably, and many issues were close questions throughout the litigation and trial. Trans Ova never attempted to conceal its use of XY's technology, but attempted to justify it with defenses of a valid license and patent invalidity or unenforceability. In considering all the relevant factors, the Court finds that the punitive increase in damages permitted under § 284 would be inappropriate on these facts, even if the jury's willful infringement finding remained intact.

In sum, the Court declines to award enhanced damages here, and denies XY's Damages Motion.

## VI. XY'S ROYALTY MOTION

XY's Royalty Motion requests that the Court enter an order assessing an ongoing royalty for Trans Ova's continued use of the patents-in-suit. (ECF No. 471.)

Remedies to prevent future infringement may take the form of injunctive relief or an ongoing royalty. In the instant case, the jury found that XY had unclean hands, barring any injunctive relief. (ECF No. 461 at 9.) "[A]bsent egregious circumstances,

when injunctive relief is inappropriate, the patentee remains entitled to an ongoing royalty." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 807 F.3d 1311, 1332–33 (Fed. Cir. 2015).  Entitlement to an ongoing royalty arises from 35 U.S.C. § 284, which provides that damages "adequate to compensate for the infringement" should be "in no event less than a reasonable royalty for the use made of the invention."  Thus, where future use of the patents is contemplated, a reasonable ongoing royalty may be awarded.  However, an ongoing royalty need not be awarded "as a matter of course whenever a permanent injunction is not imposed." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314–15 (Fed. Cir. 2007) (noting that in many cases where an injunction is not entered, the court may direct the parties to negotiate a license for future use).  "When a court orders ongoing relief, the court acts within its equitable discretion." *SCA Hygiene*, 807 F.3d at 1331; *cf. Paice,* 504 F.3d at 1313 n.13 ("We use the term ongoing royalty to distinguish this equitable remedy from a compulsory license.").

Trans Ova first argues that, based on its belief that the Agreement continues in effect, no ongoing royalty is necessary.  (ECF No. 485 at 3.)  However, anticipating the possibility of a finding that the Agreement was terminated in 2009, as the Court found above in Part I, Trans Ova argues in the alternative that: (1) the Court should permit the parties to negotiate a reasonable license; or (2) alternatively, the Court should enforce the royalty rates set forth in the parties' prior Agreement.[3]  (*Id.* at 3–8.)  As to the first argument, XY contends that negotiations would be a futile exercise, as evidenced by

---

[3] The Court notes that Trans Ova effectively admits its intent to continue to practice XY's patents, such that some remedy for future infringement is necessary.

the fact that the parties negotiated in vain for years before finally filing suit.  (ECF No. 492 at 2–3.)  The Court agrees with XY, particularly given the likelihood that an appeal will be filed in this matter that would necessarily affect the parties' negotiations. Accordingly, the Court finds that an ongoing royalty is appropriate.  However, should the parties successfully negotiate a future license, the Court's awarded ongoing royalty may be supplanted by that license without necessity for an order terminating the ongoing royalty.

Consequently, the Court must determine a reasonable ongoing royalty rate to award.  XY's Royalty Motion first notes that the jury's award of $4,585,000 in damages for infringement was nearly identical to damages expert Todd Schoettelkotte's calculations of XY's damages from April 2009 through January 2016, which amounted to $4,584,555.  (ECF No. 471 at 2.)  At trial, Mr. Schoettelkotte opined that the royalty rate should be increased from the 10% of gross sales set forth in the Agreement to 15% of gross sales, as well as an additional 4% royalty for reverse sorting services (for a total of 19%), based on a hypothetical negotiation analysis with an infringer.  (Tr. at 932–35; ECF No. 470 at 2–3.)  Given that amount of the patent damages awarded by the jury was nearly identical to the amount XY's expert had calculated, the Court finds it reasonable to conclude that the jury adopted Mr. Schoettelkotte's damages analysis.  In so doing, it can be also reasonably assumed that the jury found that the royalty rates the expert proposed constituted adequate compensation for Trans Ova's past infringement.  (*See* Jury Instructions p. 62 ("the amount [of damages] must be at least as much as the amount of money that XY would have received if Trans Ova had been paying a reasonable royalty to XY for Trans Ova's use during the period of

23

infringement").)  XY now argues that the Court's ongoing royalty award should be increased further, by between 25% and 50%.[4]  (ECF No. 471 at 5–10.)

XY relies on two sources of law to support its contention that the Court should impose an increased ongoing royalty.  First, XY cites a case from the Eastern District of Texas which states that "[t]he Federal Circuit has instructed that post-verdict infringement should typically entail a higher royalty rate than the reasonable royalty found at trial."  *Creative Internet Advert. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 861 (E.D. Tex. 2009) (citing *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 n.2 (Fed. Cir. 2008)).  However, in *Amado*, the case on which the Texas court relied, the Federal Circuit in fact stated, "We take no position on the proper amount of the eventual award.  That, of course, is a matter committed to the sound discretion of the district court."  517 F.3d at 1362 n.2.  The Federal Circuit continued by "observ[ing] only that, logically, the eventual award should fall somewhere between the $0.04 amount the jury found to be an appropriate pre-verdict reasonabl[e] royalty and the $2.00 amount [the patent holder] was willing to accept in exchange for a license."  *Id.*  That is, under the facts of *Amado*, no prior license existed, and the jury awarded damages in an amount much smaller than the amount the patentee sought under a proposed license.  The Court finds that *Amado* is inapplicable here, where a pre-infringement license in fact existed, and where the jury's damages award imposed a higher royalty rate than the rate XY agreed to accept in the license.  Consequently, the Court rejects the much broader assertion in

---

[4] XY also argues that the increased ongoing royalty rate should also be trebled as enhanced damages based on the jury's finding of willful infringement.  (ECF No. 471 at 10–11.) As the Court has vacated the willfulness finding, *see* Part II above, the Court rejects this argument and will not apply any multiplier to the ongoing royalty rate.

the Texas case XY cites, and finds that it is not required to award an ongoing royalty at a rate higher than that in the jury's damages award.

XY also supports its argument by citing various factors under *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), which XY contends apply to this case to support an increased ongoing royalty rate.  (ECF No. 471 at 5–12.)  The *Georgia-Pacific* factors are not "a talisman for royalty rate calculations, [but] district courts regularly turn to this 15-factor list" to determine reasonable royalties. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014) (further noting that, depending on the case, "many of the *Georgia-Pacific* factors simply are not relevant" and need not be considered).

Trans Ova counters by arguing that the *Georgia-Pacific* factors need not be applied where an actual license for XY's technology has been issued, both to Trans Ova and to others, and XY has uniformly established a 10% rate in those existing licenses.  (ECF No. 485 at 6–7.)  The Federal Circuit has indeed held, in the context of the intial assessment of damages for infringement, that "[a]n established royalty is usually the best measure of a 'reasonable' royalty for a given use of an invention." *Monsanto Co. v. McFarling*, 488 F.3d 973, 978 (Fed. Cir. 2007).  However, Trans Ova fails to cite any case in which a court used an established royalty rate for a post-verdict ongoing royalty award without considering the other *Georgia-Pacific* factors.  As such, the Court will proceed to that analysis.

XY argues, based on the *Georgia-Pacific* factors, that the Court should consider the following in increasing an ongoing royalty rate: (1) the parties' relationship has

changed now that Trans Ova is an adjudged infringer; (2) even in 2016, at the time of

trial, no commercially ready alternatives to XY's technology currently exist, such that XY

can command a higher rate; and (3) straw prices have declined since the Agreement

was entered into, such that a higher minimum royalty per straw should be assessed.

(ECF No. 471 at 7–10 (citing Mr. Schoettelkotte's analysis suggesting the new minimum

royalty should be $7.50, an increase from the Agreement's $5).)  XY contends that

these arguments respectively align with *Georgia-Pacific* factors 5 ("[t]he commercial

relationship between the licensor and licensee"), 9 ("[t]he utility and advantages of the

patent property over the old modes or devices, if any"), and 15 ("[t]he amount that a

licensor (such as the patentee) and a licensee (such as the infringer) would have

agreed upon (at the time the infringement began) if both had been reasonably and

voluntarily trying to reach an agreement").  *Georgia-Pacific*, 318 F. Supp. at 1120.  The

Court disagrees with XY's application of these factors to reach a $7.50 minimum

royalty, and a rate that begins with the 15% royalty rate adopted by the jury and

increases it by 25% to 50%.

First, XY contends that a higher rate should be imposed now that the parties'

relationship has changed from that of "a willing licensor and a willing licensee" to

patentee and infringer.  (ECF No. 471 at 7.)  The evidence adduced at trial showed

that, in fact, XY was not a "willing licensor" when the infringement at issue began in

2009; rather, XY had engaged in failed negotiations to enter into an amended license

agreement with Trans Ova at that time, based on XY's allegations of breach.  The jury

found that both parties breached the Agreement and that XY has unclean hands, and

the Court cannot now ignore that conduct in hypothesizing a breachless negotiation in

26

which XY willingly offered a license to Trans Ova—particularly when exercising the Court's equitable discretion.  *See SCA Hygiene*, 807 F.3d at 1331.  The parties' changed relationship does not find XY blameless and entitled to an increased royalty rate on that basis, as XY contends.

Second, *Georgia-Pacific* factor 9 discusses any benefits or advantages the patented property has over prior methods in order to determine how high a price it might command.  318 F. Supp. at 1120.  XY's argument that no commercial alternatives exist to its technology is the inverse of factor 9; that is, with some minor improvements, XY's technology appears to be largely the same as it was when Trans Ova last held a license for it in 2009, but no competing technology challenges it on a commercial scale.  The Court declines to stretch factor 9 to fit XY's model.  However, the evidence XY cites in support of this argument can be considered under factor 8, "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity." *Id.*  The evidence at trial showed that the use of sorted semen via XY's technology has spread rapidly in recent years, and the success and popularity of XY's methods suggests that a higher rate than that in the Agreement may be appropriate.

Third, XY relies on factor 15 to support its argument that declining straw prices support a higher minimum royalty rate.  Factor 15 proposes a hypothetical negotiation; that is, it asks what the parties would have agreed upon if they had been negotiating in good faith.  *Id.*  But XY does not link this to its argument in favor of a higher minimum royalty rate.  XY argues that the minimum $5 per straw or per service set forth in Exhibit D to the Agreement was included to protect XY against falling straw prices, but does not explain why it is insufficient now that those prices have fallen.  (ECF No. 471 at 9.)

27

Indeed, XY adjudged the $5 minimum to be sufficient to protect its interests against falling prices at the time of the Agreement, and the evidence at trial of XY's licenses negotiated at a later date with other licensees revealed that the highest minimum royalty assessed was $6.  (*Id.* (citing Tr. at 896).)  The Court finds as a result that the evidence at trial under this factor does not support increasing the minimum royalty to $7.50 per straw.

Finally, the Court notes that *Georgia-Pacific* factor 1 is "[t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty."  318 F. Supp. at 1120.  As Trans Ova notes, every one of XY's prior licenses includes a 10% royalty rate, which tends to prove that 10% is XY's established royalty.  (ECF No. 485 at 6–7.)  The Court may properly consider this factor in conjunction with the others.

After considering the evidence presented at trial in light of the relevant factors discussed above, the Court finds that a reasonable ongoing royalty should be awarded by averaging the reasonable rates assessed by the jury as damages for infringement, and the rates XY agreed to in the parties' initial Agreement.  Therefore, the Court will award an ongoing royalty at a rate of 12.5% of gross sales, with an additional royalty of 2% for reverse sorting services.  The per-straw or per-service minimum royalty shall remain unchanged at $5, as the jury did not modify that portion of the Agreement in awarding infringement damages.  XY's Royalty Motion is therefore granted in part.

## VII.  XY'S INTEREST MOTION

XY's Interest Motion seeks prejudgment interest for both its contract damages and its infringement damages.  (ECF No. 472.)  XY's source of entitlement to

28

prejudgment interest differs for each category of damages, as does the applicable law;

therefore, the Court will discuss them separately.

## A.       Contract Damages

XY contends that it is entitled to prejudgment interest on its award of contract

damages based on Colorado law, which provides as follows:

> (a) When money or property has been wrongfully withheld,
> interest shall be an amount which fully recognizes the gain
> or benefit realized by the person withholding such money or
> property from the date of wrongful withholding to the date of
> payment or to the date judgment is entered, whichever first
> occurs; or, at the election of the claimant,
> (b) Interest shall be at the rate of eight percent per annum
> compounded annually for all moneys or the value of all
> property after they are wrongfully withheld or after they
> become due to the date of payment or to the date judgment
> is entered, whichever first occurs.

Colo. Rev. Stat. § 5-12-102(1).  The parties dispute the effect of the "wrongfully

withheld" language; Trans Ova argues that § 5-12-102 only provides prejudgment

interest to "non-breaching parties" where the breaching party failed to pay, and here

Trans Ova tried to pay royalties to XY.  (ECF No. 6–7.)  However, the Court agrees with

XY that Colorado courts interpret the initial clause to refer to the date of accrual based

on when the circumstances require payment, not a limitation of the party's entitlement

to interest.  *Karg v. Mitchek*, 983 P.2d 21, 27 (Colo. App. 1998) ("Section

5-12-102(1)(b), C.R.S. 1997, allows interest on money which is due and owing,

regardless of whether it is wrongfully withheld.").  The Court therefore finds that an

award of prejudgment interest is appropriate on XY's contract damages.[5]

The next question before the Court is the applicable interest rate to apply. XY proposes one of two rates: 18% or 8%. (ECF No. 472 at 2–5.) The 18% figure comes from § 3.4 of the Agreement, entitled "Audit Rights," which permits XY to audit and examine Trans Ova's records and premises to ensure compliance with the terms of the Agreement. (Trial Ex. 17 at 7.) The clause provides that, "[i]n the event of underpayment of any amount by [Trans Ova], . . . [Trans Ova] shall pay to [XY] the actual cost of the entire audit, together with any amounts due along with interest on such amounts at eighteen percent (18%) compounded annually." (*Id.*) XY argues that this contractual provision demonstrates that the parties have already contemplated the interest rate for underpaid royalties, and mutually agreed to set it at 18%. (ECF No. 472 at 2–3.) Trans Ova objects, arguing that the Audit Rights provision was never invoked by XY, and it plainly applies to interest on underpayments revealed during an audit, not prejudgment interest after a jury verdict. (ECF No. 483 at 4–5.)

The Court agrees with Trans Ova, and will not stretch the meaning of § 3.4 of the Agreement to impose an 18% prejudgment interest rate. XY argues in its Reply that, "[h]ad XY audited Trans Ova in addition to filing suit, Trans Ova would indisputably owe XY 18% interest on the royalty shortfall." (ECF No. 491 at 5.) But XY admits that it never conducted an audit pursuant to § 3.4 (ECF No. 472 at 4); instead, XY improperly treated

---

[5] Trans Ova also argues that no prejudgment interest should be awarded because the jury determined that XY has unclean hands. (ECF No. 483 at 7–8.) The Court rejects this argument, as Trans Ova has cited no case supporting its argument that an award of prejudgment interest pursuant to an explicit statute should be construed as an equitable remedy barred by unclean hands.

the Agreement as terminated in November 2007, breaching the Agreement and its duty of good faith and fair dealing in the process. (*See* ECF No. 461 at 1–2.)  The Court declines to presume a hypothetical audit in the absence of XY's breach, and instead finds that because XY never invoked § 3.4, its 18% interest rate does not apply here.

XY next contends that, even if § 3.4 of the Agreement does not explicitly apply, it can be considered as a guide of what XY is entitled to under § 5-12-102(1)(a), which provides for interest in "an amount which fully recognizes the gain or benefit realized" by Trans Ova.  (ECF No. 472 at 3.)  XY argues that Trans Ova benefitted by underpaying royalties, and that XY was required to reject Trans Ova's proffered royalty payments after November 2007 in order to avoid waiving its contractual arguments.  But XY's argument fails to show that Trans Ova's unpaid royalties resulted in gains to the tune of 18% interest.  The Court will not apply an 18% interest rate, far above the prime rate or the rate of inflation, to penalize Trans Ova when it attempted to comply with the Agreement in the face of XY's breach; the purpose of prejudgment interest is compensatory, not punitive.  Accordingly, the Court finds that an 18% interest rate would far exceed the "gain or benefit realized" by Trans Ova and is not warranted under § 5-12-102(1)(a).

XY alternatively proposes applying the 8% statutory prejudgment interest rate provided under § 5-12-102(1)(b).  (ECF No. 472 at 4–5.)  Trans Ova objects to this, too, arguing that it never breached the Agreement because of XY's prior breach, and that it never wrongfully withheld money from XY.  (ECF No. 483 at 5–6.)  The Court has already rejected both of these arguments above, and finds that the 8% statutory rate is appropriate here.

The Court therefore grants in part XY's Interest Motion as to its contract damages of $1,481,000, and will apply a prejudgment interest rate of 8% compounded annually, pursuant to Colorado Revised Statute § 5-12-102(1)(b).  As of February 29, 2016, XY calculated that amount at $1,302,475.  (ECF No. 472-1 ¶ 4(e).)

One additional matter must be resolved prior to proceeding to XY's request for prejudgment interest on its infringement damages.  The jury also awarded Trans Ova $528,000 in contract damages, and although the parties' motions do not discuss it, the Court finds that the same analysis regarding entitlement to prejudgment interest at a compounding rate of 8% applies to Trans Ova's damages.  While Trans Ova's award, being a smaller amount, will logically offset XY's damages award, it is reasonable to calculate the prejudgment interest applicable to each award before performing the arithmetic to result in the net total amount that will be awarded to XY in the Final Judgment.

Accordingly, the Court directs the parties to file, on or before April 15, 2016, a joint notice of their calculation of the prejudgment interest applicable to Trans Ova's damages award of $528,000.  The Court expects the parties to make every possible attempt to stipulate to the correct calculation, but if the parties cannot agree, each party's position shall be included in the joint notice.  In so doing, the parties will not be deemed to waive any objections they might have to the Court's rulings on this matter.

**B.    Infringement Damages**

XY's Interest Motion seeks prejudgment interest on its award of damages for infringement based on 35 U.S.C. § 284, which provides that damages should be "adequate to compensate for the infringement . . . together with interest and costs as

32

fixed by the court." The Supreme Court has held that "[p]rejudgment interest should ordinarily be awarded where necessary to afford the plaintiff full compensation for infringement." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983) (reasoning that the patentee should be compensated for the time value of the unpaid royalties). However, the Supreme Court has "not construe[d] § 284 as requiring the award of prejudgment interest whenever infringement is found. That provision states that interest shall be 'fixed by the court,' and in our view it leaves the court some discretion in awarding prejudgment interest." *Id.* at 656–57. Where a patent owner was responsible for "undue delay" in bringing suit, "it may be appropriate to limit prejudgment interest, or perhaps deny it altogether." *Id.* at 657. This is so because a patentee that creates undue delay need not be compensated for the time value of the funds it voluntarily delayed in pursuing. *See id.*

Trans Ova argues that prejudgment interest on the infringement damages should be denied because XY was responsible for undue delay here. (ECF No. 483 at 8–10.) The basis for Trans Ova's argument is that, after XY's wrongful attempt to terminate the Agreement, it "proceeded to negotiate in bad faith for years," proposing amended licenses with oppressive terms and rejecting Trans Ova's attempt to arbitrate the matter in 2008. (*Id.*) Trans Ova contends that XY also delayed in filing suit in Texas instead of Colorado, further protracting the litigation, all of which unfairly increased the patent damages to much more than they otherwise would have been. (*Id.* at 10.) XY objects to this argument, contending that it negotiated in good faith, and that its choice of venue did not delay the case and did not prejudice Trans Ova. (ECF No. 491 at 6–9.) XY

33

further argues that even during the purported delay, Trans Ova has been able to accrue interest on the unpaid funds in the meantime.  (*Id.*)  The Court finds that, while Trans Ova points to evidence of some delay caused by XY, there is no indication that the delay was sufficiently undue to justify rejecting XY's request for prejudgment interest under § 284.  The Court also agrees with XY that Trans Ova was not prejudiced by the delay because, after XY rejected its attempts to pay royalties, those funds remained in Trans Ova's accounts.  As such, the Court finds that a fully compensatory award of damages for infringement in this case should include an award of prejudgment interest. *See* 35 U.S.C. § 284.

XY argues that the Court should apply the Colorado statutory interest rate of 8%, but its rationale for this is simply that "'courts often use the statutory rate in the state in which they sit'" due to the absence of any statutory rate in the patent law.  (ECF No. 472 at 6 (quoting *Bowling v. Hasbro*, 582 F. Supp. 2d 192, 208 (D.R.I. 2008)).)  The Court finds this an insufficient justification to apply an 8% prejudgment interest rate; the cases XY cites suggest only that the state statutory rate is appropriate because it serves as a "benchmark" or consistent rate.  XY alternatively proposes calculating prejudgment interest at the average prime rate for the period of infringement, which XY states was 3.25%.  (ECF No. 472 at 7.)  Trans Ova does not dispute that this was the applicable prime rate.  The Court finds that applying the prime rate more closely approximates the lost time value of these funds, which is the reasoning behind an award of prejudgment interest, and the prime rate serves as a more universal benchmark than a state statutory rate.  Accordingly, the Court will apply the prime rate of 3.25% to calculate XY's award of prejudgment interest on its infringement damages.

Lastly, Trans Ova contests XY's request that the prejudgment interest be compounded annually in order to be fully compensatory, arguing that simple interest is sufficient to compensate XY because XY voluntarily "chose not to cash the royalty checks that Trans Ova tendered. [XY] could have used the damages award, but chose not to." (ECF No. 483 at 11.) The Court finds this argument unpersuasive. While XY's arguments regarding the termination of the Agreement were ultimately unsuccessful, it should not be denied a fully compensatory award of prejudgment interest merely because it chose not to waive those arguments by accepting Trans Ova's proffered payments. The parties agree that the award of compound or simple interest is within the Court's discretion. (*See id.* (citing *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986)).) The Court finds that an award of prejudgment interest that "afford[s] the plaintiff full compensation for infringement" should be compounded annually, as such interest calculation comes closer to the value of those funds had they been accruing in XY's accounts since the infringement commenced.

The Court therefore grants in part XY's Interest Motion as to its infringement damages of $4,585,000, and will apply a prejudgment interest rate of 3.25% compounded annually, pursuant to 35 U.S.C. § 284. As of February 29, 2016, XY calculated that amount at $465,849. (ECF No. 472-1 ¶ 4(I).)

## VIII. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Trans Ova's Renewed Motion for Judgment as a Matter of Law Under Rule 50(b) Or, in the Alternative, Motion for a New Trial Under Rule 59(a) Or, in the Alternative, Motion to Alter or Amend a Judgment Under Rule 59(e) (ECF No.

35

473), Motion for a New Trial Under Rule 59(a) (ECF No. 479), and Motion for a New Trial Under Rule 59(a) on the Issue of Invalidity (ECF No. 480) are DENIED;

2. Trans Ova's Motion to Alter or Amend a Judgment Under Rule 59(e) (ECF No. 477) is GRANTED, and the jury's finding of willful infringement is VACATED;

3. XY's Motion to Declare this Case Exceptional Pursuant to 35 U.S.C. § 285 and to Award Attorneys' Fees (ECF No. 467) and Motion for Award of Enhanced Damages for Patent Infringement Under 35 U.S.C. § 284 (ECF No. 468) are DENIED;

4. XY's Motion to Set an Ongoing Royalty Rate (ECF No. 471) is GRANTED IN PART, and Trans Ova shall pay a rate of 12.5% of all gross receipts for the licensed products set forth in the parties' prior License Agreement, with an additional 2% royalty for reverse sorting services, unless the parties reach a separate license agreement which may supersede this ongoing royalty rate without further order of the Court;

5. XY's Motion for Prejudgment Interest (ECF No. 472) is GRANTED IN PART, and XY is AWARDED prejudgment interest on its award of contract damages of $1,481,000 at the rate of 8%, and on its award of infringement damages of $4,585,000 at the rate of 3.25%, each compounded annually to the date of judgment;

6. The Court directs the parties to file, on or before April 15, 2016, a joint notice of their calculation(s) of the prejudgment interest applicable to Trans Ova's damages award of $528,000 at the rate of 8%, compounded annually, as well as

36

an updated calculation of XY's prejudgment interest at the applicable rates to the

date of April 15, 2016; and

7.      Once the Court has received this filing, it will direct the Clerk to enter Final

Judgment in XY's favor in the net amount reflecting the offset from Trans Ova's

damages, and to close this case.


Dated this 8th day of April, 2016.

                                        BY THE COURT:


                                        _____
                                        William J. Martinez
                                        United States District Judge