**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-0876-WJM-NYW

XY, LLC,

    Plaintiff / Counterclaim Defendant,

v.

TRANS OVA GENETICS, LC,

    Defendant / Counterclaim Plaintiff.

**ORDER ON POST-JUDGMENT MOTIONS**

Before the Court is XY's Motion to Alter or Amend the Judgment Under Rule 59(e) ("Rule 59 Motion," ECF No. 505), and XY's Motion for Reconsideration Under Rule 60(b)(6) ("Rule 60 Motion," ECF No. 544). Both of these motions challenge portions of this Court's Order on Post-Trial Motions ("Post-Trial Order," ECF No. 500). Familiarity with the Post-Trial Order is presumed. For the reasons explained below, the Court denies the Rule 59 Motion. As for the Rule 60 Motion, the Court grants it to the limited extent that the jury's willfulness finding is reinstated. The Rule 60 Motion is otherwise denied.

## I. RULE 59 ANALYSIS

**A.    Legal Standard**

XY brings its Rule 59 Motion specifically under Federal Rule of Civil Procedure 59(e): "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." This Rule "was adopted to make clear that the district court

possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982) (internal quotation marks omitted; alterations incorporated). Accordingly, the Court may amend the judgment in its discretion on account of "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion under the clear error prong of this test "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* However, motions to alter or amend the judgment pursuant to Rule 59(e) "are regarded with disfavor. . . [and are] 'not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.'" *Kerber v. Qwest Group Life Ins. Plan*, 727 F. Supp. 2d 1076, 1076 (D. Colo. 2010) (quoting *Servants of the Paraclete*, 204 F.3d at 1012).

**B.     Analysis**

In the Post-Trial Order, the Court elected to award XY an ongoing royalty in lieu of an injunction or a requirement that XY and Trans Ova negotiate an ongoing royalty amongst themselves. (ECF No. 500 at 21–23.) The Court found that the jury, in fixing damages for past infringing sales, had accepted XY's damages expert's 19% royalty rate. (*Id.* at 23.) The Court rejected, however, XY's argument that the ongoing royalty rate necessarily must exceed the rate set by the jury for past infringement. (*Id.* at 24–25.) The Court found that XY's primary support for its position—the Federal Circuit's decision in *Amado v. Microsoft Corp.*, 517 F.3d 1353 (Fed. Cir. 2008)—does

not go as far as XY claims.  (*Id.* at 24.)  Applying various factors, the Court instead set a royalty rate of 12.5% of gross sales, plus 2% for reverse sorting services, with a minimum per-straw or per-service royalty of $5.  (*Id.* at 25–28.)

In its Rule 59 Motion, XY vehemently protests this Court's decision to award less than 19%, once again citing *Amado*.  (*Compare* ECF No. 471 at 3–4 *with* ECF No. 505 at 3–4.)[1]  XY also cites *Bianco v. Globus Medical, Inc.*, 53 F. Supp. 3d 929 (E.D. Tex. 2014), in which Federal Circuit Judge William C. Bryson, sitting by designation in the Eastern District of Texas, stated that, "[a]lthough individual considerations may weigh in favor of decreasing the ongoing royalty rate relative to that awarded by the jury, the Court notes that pursuant to *Amado* the ultimate ongoing royalty rate should not be lower than the rate awarded by the jury for pre-verdict damages."  *Id.* at 939.  XY also cites a forthcoming scholarly article by Gregory Sidak, chairman of an expert economics consulting firm, who concludes that none of the 35 post-*Amado* district court cases he surveyed "specified an ongoing royalty below the jury-determined a reasonable royalty for past damages."  J. Gregory Sidak, *Ongoing Royalties for Patent Infringement* 12 (Oct. 21, 2015), *available at* https://www.criterioneconomics.com/docs/ongoing-royalties-for-patent-infringement.pdf (last accessed Nov. 8, 2016) (24 Texas Intell. Prop. L.J. forthcoming 2016) (hereafter, "Sidak").[2]

*Amado*, of course, was raised and previously rejected, and is therefore not a

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination, particularly in XY's briefing, which often employs an unnumbered caption page, with the main text and page numbering beginning on the second page.

[2] XY also placed this article into the record at ECF No. 505-1.

basis for Rule 59 relief. And although XY did not previously raise *Bianco* or the Sidak article, neither was unavailable at the time of XY's previous motion to set an ongoing royalty rate, which was filed on February 29, 2016. (ECF No. 471.) Thus, those authorities likewise present no basis for Rule 59 relief. Nonetheless, for clarity, the Court notes the following.

*Amado* has certainly been interpreted by later courts as requiring that any ongoing royalty be set no lower than the jury's past-infringement royalty. But this is largely based on two considerations. First, *Amado* endorsed previous non-precedential statements to the effect that "[o]nce a judgment of validity and infringement has been entered, . . . the [royalty] calculus is markedly different because different economic factors are involved [as compared to a pre-judgment calculus]." 517 F.3d at 1362. Second, Amado stated in a footnote that "logically, the eventual [ongoing royalty] award [in that case] should fall somewhere between the $0.04 amount the jury found to be an appropriate pre-verdict reasonably royalty and the $2.00 amount Amado was willing to accept in exchange for a license." *Id.* at 1362 n.2. The first statement is arguably a holding, but it does not specify that a court setting an ongoing royalty rate cannot go below the jury's pre-verdict royalty rate. As for the second (footnoted) statement, it is not a holding, but an observation heavily informed by the facts of that case. In particular, the court does not specify whether the jury's pre-verdict royalty was "logically" the lowest possible ongoing royalty because the law dictates it to be so, because the jury's rate was the lower bound of the parties' arguments, or because of some other consideration. *See id.* at 1356.

Moreover, the Sidak article is partially senseless if *Amado* amounted to a holding.  Sidak, among other things, empirically explores post-*Amado* district court decisions to see whether those courts have "developed a consistent methodology for determining an ongoing royalty."  Sidak at 3.  He finds none, and therefore proposes "a simple yet rigorous economic methodology that courts can apply when determining an ongoing royalty."  *Id.*  Sidak does not ask, "Can a judge award an ongoing royalty rate lower than the jury's royalty rate for past infringement?"  His observation that the 35 district court cases surveyed always award at least the same royalty rate fixed by the jury was an observation gleaned from his data and informing his opinions about the proper method of calculating an ongoing royalty.  *See id.* at 12.  When it comes to calculating that royalty, Sidak opines that the post-verdict context "will *typically* support the award of an ongoing royalty that exceeds the reasonable royalty awarded for past infringement," *id.* at 25–26 (emphasis added), but he nowhere argues that any other option is categorically off-limits.

Many of these findings and opinions would be misdirected if *Amado* indeed held that the jury's pre-verdict royalty rate is the lower limit.  An observation that 35 courts have adopted that lower limit would have no empirical relevance to Sidak's proposed royalty calculation method, given that the jury's rate would necessarily be the starting point under *Amado*.  Nor would there be any need to discuss whether an ongoing royalty rate can drop below the pre-verdict royalty rate.

In addition, the Court finds that the current trend in Supreme Court patent cases is to preserve district courts' traditional equitable discretion as much as possible.  *See,*

*e.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Accordingly, the Court reaffirms its previous finding that, notwithstanding other courts' and commentators' interpretations of *Amado*, district courts retain the equitable discretion to set any adequately reasoned ongoing royalty rate, whether above or below the rate fixed by the jury for pre-verdict infringement. (*See* ECF No. 500 at 24–28.)

As for the rate the Court selected here, the Court thoroughly explained its reasoning in the Post-Trial Order. (*See id.*) To that reasoning, the Court adds only that—to the extent Federal Rule of Evidence 408 prevents the Court from considering the parties' failed license negotiations (*see* ECF No. 505 at 9)—the Court would nonetheless have concluded that XY was not, in reality, a willing licensor based solely on the jury's finding that both parties breached their agreement (*see* ECF No. 500 at 26–27), a finding amply supported by evidence introduced at trial. The Court finds the remainder of XY's arguments to be meritless.

## II. RULE 60 ANALYSIS

### A.     Legal Standard

XY brings its Rule 60 Motion specifically under Rule 60(b)(6): "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: * * * (6) any other reason that justifies relief." While relief under clauses (1)–(5) of Rule 60(b) is "extraordinary and may only be granted in exceptional circumstances," relief under clause (6) "is even more difficult to attain and is appropriate only when it offends justice to deny such relief." *Yapp v.*

*Excel Corp.*, 186 F.3d 1222, 1231, 1232 (10th Cir. 1999) (internal quotation marks omitted).

"In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under Fed. R. Civ. P. 60(b)(6)." *Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 702 (10th Cir. 1989). Such a change is the basis of XY's Rule 60 Motion, as explained next.

**B.     Analysis**

At trial, the jury received a verdict form asking, "Do you find that XY has proven by clear and convincing evidence that Trans Ova's infringement was willful?" (ECF No. 461 at 3.) The jury answered affirmatively. (*Id.*) In the Post-Trial Order, however, the Court agreed with Trans Ova that *In re Seagate Technologies, LLC*, 497 F.3d 1360 (Fed. Cir. 2007), required vacating that portion of the verdict. Specifically, the Court found that willfulness under *Seagate* required a showing of an objectively high likelihood that the infringer's actions constituted infringement of a valid patent, but XY had not demonstrated such objective unreasonableness. (ECF No. 500 at 10–15.)

On June 13, 2016—about two months after the Post-Trial Order—the Supreme Court announced its decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, *supra*. *Halo* abrogated *Seagate*'s objective unreasonableness requirement. 136 S. Ct. at 1932–34. XY therefore argues that the willfulness finding should be reinstated. (ECF No. 544 at 4–6.) The Court agrees, and will therefore reinstate that portion of the verdict.

The Court disagrees with XY, however, that such reinstatement should

necessarily prompt the Court to reconsider its decision denying enhanced damages and attorneys' fees. (*Compare* ECF No. 500 at 17–21 *with* ECF No. 544 at 7–11, 13.) As to both enhanced damages and attorneys' fees, in its Post-Trial Order the Court explicitly stated that it would have denied XY's requests regardless of the jury's willfulness finding. (ECF No. 500 at 18 n.2 ("Even if the Court had not vacated the willful infringement finding, the Court would still deny XY's Fee Motion."); *id.* at 20 ("even if the Court had not vacated the jury's willful infringement finding, the Court would still deny XY's request for enhanced damages").) The Court thoroughly explained its reasons for concluding, under the totality of the circumstances, that enhanced damages and attorneys' fees are not appropriate, despite Trans Ova's infringing conduct. (*Id.* at 17–21.) XY provides no reason to cause the Court to depart from that conclusion—and certainly no reason it could not have argued previously.

Moreover, the Court's reasoning comports with *Halo*, which abrogated *Seagate*'s objective test but nonetheless counseled that district courts "should continue to take into account the particular circumstances of each case in deciding whether to award [enhanced] damages," and emphasized that enhanced damages "should generally be reserved for egregious cases typified by willful misconduct." *Halo*, 136 S. Ct. at 1933, 1934; *see also id.* at 1935 ("Th[e] balance [between encouraging innovation and protecting it] can indeed be disrupted if enhanced damages are awarded in garden-variety cases. As we have explained, however, they should not be."). This case is not "egregious," nor is it outside the "garden-variety" of patent cases. The Court therefore denies XY's Rule 60 Motion to the extent XY seeks to parlay the finding of willfulness

into an award of enhanced damages or attorneys' fees.[3]

### III. CONCLUSION

For the reasons set forth above the Court ORDERS as follows:

1. XY's Motion to Alter or Amend the Judgment Under Rule 59(e) (ECF No. 505) is DENIED;

2. XY's Motion for Reconsideration Under Rule 60(b)(6) (ECF No. 544) is GRANTED IN PART and DENIED IN PART as follows:

    a. The Motion is GRANTED to the extent that the jury's willfulness finding (ECF No. 461 at 3, Question #8) is REINSTATED; and

    b. The Motion is otherwise DENIED; and

3. Trans Ova's Motion for Leave to File Sur-Reply (ECF No. 551) is DENIED AS MOOT.

Dated this 10th day of November, 2016.

BY THE COURT:

_William J. Martinez_
United States District Judge

---

[3] XY further argues that the reinstatement should factor into the Court's reconsideration of the ongoing royalty rate. (ECF No. 44 at 11–12.) The Court has already concluded that it will not reconsider the ongoing royalty rate.