IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 13-cv-0876-WJM-NYW

XY, LLC,

    Plaintiff / Counterclaim Defendant,

v.

TRANS OVA GENETICS, LC,

    Defendant / Counterclaim Plaintiff.

## ORDER ON ONGOING ROYALTIES

In February 2016, Plaintiff XY, LLC ("XY"), convinced a jury that Defendant Trans Ova Genetics, LC ("Trans Ova"), was infringing several of XY's patents, and that those patents are valid. (ECF No. 461.) In post-verdict motions, the Court held that XY was not entitled to a permanent injunction against Trans Ova's ongoing infringement, but instead would be awarded a reasonable ongoing royalty. (ECF No. 500 at 21–28.)

Trans Ova appealed the jury's verdict (among other things) and XY cross-appealed the ongoing royalty rates set by the Court (among other things). The Federal Circuit affirmed the verdict and most of the judgment, but vacated the Court's ongoing royalty rates for further consideration. *See XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282 (Fed. Cir. 2018). As discussed more thoroughly below, the Federal Circuit's major concern was that the rates set by this Court were too low, effectively putting Trans Ova in a better position than it should be as an adjudged infringer.

The Federal Circuit's vacatur requires the Court to reopen two motions: (1) XY's

Motion to Set an Ongoing Royalty Rate (ECF No. 471), and (2) XY's Motion for Clarification of the Court's Judgment on Ongoing Royalties (ECF No. 592). The title of the first motion explains its content. The title of the second motion does not. The second motion asks the Court to clarify the "royalty base," or in other words, the products and services on which Trans Ova must pay royalties, regardless of the royalty rates. Disputes about the royalty base arose soon after the parties appealed, but the Court found that it lacked jurisdiction to resolve those disputes while the case remained with the Federal Circuit, and so denied the motion as premature. (ECF No. 613 at 3–4.)

For the reasons explained below, the Court agrees with XY about the scope of the royalty base. The Court will also set ongoing royalty rates that somewhat align with what XY has requested, but in certain ways do not. Finally, the Court will require XY to submit a form of amended judgment.

## I. ROYALTY BASE

The Court finds it appropriate to begin by determining the royalty base.

### A. Background

At trial, XY's damages expert, Mr. Todd Schoettelkotte, proposed a damages model that included, among other things, assumptions and opinions about the products and services on which Trans Ova must pay a royalty. Of note in that regard was the following:

1. By "the parties' long-standing practice," Trans Ova's minimum per-straw royalty of $5 had been prorated based on the number of cells in the straw, with 2 million cells considered the baseline. Thus, the minimum royalty on a 2-million-cell straw would be $5, but would increase to $7.50 for a

     3-million-cell straw, and so forth. (*See* ECF No. 592 at 5.)

  2.  The royalty base includes "making the sexed embryos [Trans Ova] uses for its embryo transfer services." (*Id.* at 4.)

  3.  The royalty base includes "revenues Trans Ova receives for each and every step of the IVF process," including "payments it receives for the necessary oocyte retrieval services and IVF fertilization drugs." (*Id.*)

  4.  The increased royalty for reverse sorting applies to all revenues generated when reverse-sorted semen is used, not simply when it is sorted. (*Id.* at 8–9; ECF No. 609 at 8.)

Mr. Schoettelkotte included each of these revenue components as part of the royalty base when formulating his damages model (ECF No. 592 at 3–6)—although, for reasons explained below (Part II.D), he assigned no value to the third item. Regardless, added together with all other aspects of his damages model, he proposed damages for pre-verdict infringement of $4,584,555. (*See* ECF No. 470 ¶ 4.)

  The jury awarded $4,585,000 (*see* ECF No. 461 at 9), which is manifestly a rounded-up version of Mr. Schoettelkotte's proposal. The Court therefore previously held "that the jury adopted Mr. Schoettelkotte's damages analysis." (ECF No. 500 at 23.) No party has since challenged this assertion, either in this Court or on appeal.

**B. Scope of the Royalty Base**

  Although the jury's adoption of Mr. Schoettelkotte's damages analysis is unchallenged, Trans Ova nonetheless argues that his view of the royalty base does not control.

1. <u>Prorating the Minimum Royalty for Larger Straws</u>

Concerning the prorating of the minimum royalty for straws of more than 2 million cells, Trans Ova does not deny that this was its "course of dealing." (ECF No. 600 at 6.) Trans Ova instead argues that this Court previously rejected Mr. Schoettelkotte's proposal to increase the $5 minimum to $7.50, and so foreclosed prorating. (*Id.* at 7–9.)

Trans Ova is conflating two separate issues. The Court indeed rejected Mr. Schoettelkotte's proposal (and therefore XY's request) that the minimum royalty *for the 2-million-cell straw* be increased to $7.50. (ECF No. 470 ¶ 17; ECF No. 500 at 27–28.) That is a separate issue from whether the minimum royalty should be prorated for straws containing more than 2 million cells. Mr. Schoettelkotte and XY both argued that it should (ECF No. 470 ¶ 17; ECF No. 471 at 10 n.2), but the Court simply did not address the matter—likely because it was presented in connection with a proposal to increase the minimum royalty, which the Court rejected. It is clear now, however, that whatever the minimum royalty, the jury accepted Mr. Schoettelkotte's claim that prorating straws larger than 2 million cells is part of Trans Ova's obligation to XY. The Court accordingly agrees with XY that this obligation must carry forward as part of the ongoing royalty. Otherwise, Trans Ova ends up with a better deal than it had before being adjudged an infringer—an incongruity with which the Federal Circuit was specifically concerned. *See XY*, 890 F.3d at 1298. (*See also* Part II.A, below.)

2. <u>Other Items of the Royalty Base</u>

As for the other three disputed items of the royalty base, Trans Ova has no persuasive argument that the jury did *not* accept these as part of Trans Ova's obligation when it accepted Mr. Schoettelkotte's damages model. Trans Ova instead argues that

paying royalties on such components of its processes would be economically infeasible, or it attempts to relitigate the scope of the relevant patents. (ECF No. 600 at 4–6, 11–12.)

Trans Ova cannot relitigate the patents post-verdict. As for economic infeasibility—a theme that runs through all of Trans Ova's arguments, both as to the royalty base and the royalty rate—the Federal Circuit has already foreclosed that consideration. First, in the appeal from this case, the Federal Circuit established that the ongoing royalty could be no less than the pre-verdict royalty awarded by the jury. *XY*, 890 F.3d at 1298. The Federal Circuit's decision made no qualification for whether that rate is economically feasible for Trans Ova. By extension, any claim that expanding the royalty base would likewise create economic infeasibility is similarly foreclosed. Second, the Federal Circuit's decision in *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, evaluates an ongoing royalty established by the district court that "seem[ed] high" and to which the infringer "likely . . . would not have agreed . . . prior to the litigation." 694 F.3d 1312, 1342. The Federal Circuit held the judgment of validity and infringement created "a substantial shift in the bargaining position of the parties," justifying a royalty rate to which a licensee would never have agreed under normal business conditions. *See also State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989) ("There is no rule that a royalty be no higher than the infringer's net profit margin."). Thus, Trans Ova's arguments have no relevance here.

Because the jury agreed with XY as to the scope of pre-verdict royalty base, the Court, again, must assess a post-verdict royalty on the same base to avoid granting Trans Ova a windfall. *See XY*, 890 F.3d at 1298.

5

**C.     Starting Date**

XY additionally requests that the Court's order specify that Trans Ova's royalty obligation "shall be considered to have commenced on February 12, 2016, the last day of trial, such that Trans Ova shall owe XY ongoing royalties for all covered sales made since then." (ECF No. 593-9 at 2.) The Court agrees that the judgment should so specify. This request is therefore granted.

## II. ROYALTY RATE

**A.     Background**

The major thrust of XY's motion for an ongoing royalty (ECF No. 471) is that the ongoing royalty rate for past infringement should be no lower than the royalty rate assessed for pre-verdict infringement, *i.e.*, no lower than 15% of gross sales plus 4% for reverse sorting services. (*Id.* at 3–5.) Originally, however, the Court assessed a post-verdict royalty "of 12.5% of gross sales, with an additional royalty of 2% for reverse sorting services." (*Id.* at 28.) As to minimum royalties, the Court ruled that "[t]he per-straw or per-service minimum royalty shall remain unchanged at $5, as the jury did not modify that portion of the [parties' License] Agreement in awarding infringement damages." (*Id.*)

On appeal, the Federal Circuit agreed with XY that this Court erred in its decision to set a royalty rate of 12.5% + 2%, because those rates are lower than the 15% + 4% awarded by the jury for pre-verdict infringement:

> Although district courts may award a lower ongoing royalty rate if economic factors have changed in the infringer's favor post-verdict—for example, if a newly-developed non-infringing alternative takes market share from the patented products—the district court identified no economic factors that would justify the imposition of rates that were lower than

the jury's.

*XY*, 890 F.3d at 1298. Thus, this Court must decide anew an appropriate reasonable royalty, no lower than 15% of gross sales, plus 4% for reverse sorting services, and in any event no lower $5 per straw or per service (prorated per the parties' prior course of dealing, as applicable).

**B.     The "When" of the Reasonable Royalty Analysis**

After the Federal Circuit's remand, the Court called for a status report from the parties on whether they intended to file any additional motions with respect to the matters the Court must decide anew. (ECF No. 616.) In response, XY announced that "re-briefing of the ongoing royalty issue would be unnecessary and inefficient," and so it "intend[ed] to file a motion to recalculate the ongoing royalty rates"—a recalculation presumably on the record as already submitted (otherwise the statement about "unnecessary and inefficient" re-briefing makes no sense). (ECF No. 621 at 1.) By contrast, Trans Ova announced an intent to reopen the record and submit numerous additional materials developed since the original judgment. (*Id.* at 2–3.)

The Court then called for further briefing from Trans Ova:

> It appears to the Court that Trans Ova is interpreting the Federal Circuit's references to "post-verdict" circumstances as a direction to consider any post-verdict circumstances, up through the present time. The Court, by contrast, interpreted "post-verdict" to refer to circumstances as they existed immediately after the verdict. However, the Court will not foreclose Trans Ova's interpretation without further briefing.

(ECF No. 622.) Trans Ova responded with authority that it interpreted as authorizing this Court to assess an ongoing royalty based on current, post-appeal, circumstances (ECF No. 623 at 3–8), although none of this authority addressed a circumstance in which a Court was recalculating a reasonable royalty because the appeals court

7

deemed the original royalty, imposed soon after the verdict, to be too low. XY replied that this Court, in its discretion, could consider evidence developed since the original judgment but that it would be inequitable under the circumstances of this case, because additional discovery would delay royalty payments even longer, and most of the new material and arguments Trans Ova sought to inject into the record were available to it the first time around. (*See* ECF No. 628.)

The Court resolved the dispute as follows:

> The Court construes the Federal Circuit's repeated focus on circumstances "between the date of first infringement and the date of the jury's verdict," [*XY*, 890 F.3d at 1297, 1298], as foreclosing the sort of re-opening of the record Trans Ova proposes. Moreover, under the circumstances of this case, the Court finds that re-opening of the record is inappropriate in any event. Accordingly, no new motion practice is needed from either party. The Court will decide anew XY's Motion to Set an Ongoing Royalty Rate on the record as it existed as of XY's reply in support of that motion and under the principles set forth in the Federal Circuit's appeal decision.

(ECF No. 634 (record citations omitted).)

The Court's statement "that re-opening of the record is inappropriate in any event" deserves some elaboration. In the Court's view, it would be inequitable to calculate a reasonable royalty based on circumstances as they currently exist, although not because of the delay inherent in the additional discovery Trans Ova proposed. The Court's task is to establish the royalty rate that it should have imposed shortly after the verdict—the rate that Trans Ova should have begun paying as of February 12, 2016. To permit Trans Ova to argue from current (post-remand) circumstances would potentially permit it to profit from what turned out to be this Court's error and the delay inherent in correcting that error on appeal. In other words, if this Court had originally

8

imposed royalty of, say, 18.75% + 5% (XY's lowest pre-judgment proposal, see ECF No. 471 at 6), and the Federal Circuit had affirmed in the face of a challenge from Trans Ova, then Trans Ova's royalty obligation would have been and would continue to be 18.75% + 5%. But if Trans Ova may now try to persuade this Court to impose a royalty lower than these figures based on circumstances since the Court first imposed a royalty, Trans Ova would be gaining an advantage it never would have otherwise received but for the Court's error. Whether changed circumstances might justify a lower rate *today* (a matter on which the Court expresses no opinion) is not relevant to what Trans Ova should have been paying as of as of February 12, 2016.

Accordingly, as the Court previously announced, the following analysis will be confined to "the record as it existed as of XY's reply in support of that motion and under the principles set forth in the Federal Circuit's appeal decision." (ECF No. 634 (record citations omitted).)

### C. Reasonable Royalty Standards

The Federal Circuit stated that this Court's "focus [when calculating a reasonable royalty] should have been on XY's improved bargaining position [in light of the verdict] and any other changed economic factors (as articulated in *Amado*, *ActiveVideo*, and *Paice*)." *XY*, 890 F.3d at 1298. The three referenced decisions are *Amado v. Microsoft Corp.*, 517 F.3d 1353 (Fed. Cir. 2008); *ActiveVideo*, *supra*; and *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293 (Fed. Cir. 2007). The basic thrust of each of these cases is that a jury verdict declaring a patent infringed and not invalid significantly changes the parties' bargaining positions in favor of the patentee, see *ActiveVideo*, 694 F.3d at 1342–43; *Amado*, 517 F.3d at 1361–62; *Paice*, 504 F.3d at 1314–15, absent intervening

9

factors not present here, *XY*, 890 F.3d at 1298.

## D. Reasonable Royalty Under the Circumstances

XY relies on a post-verdict declaration from Mr. Schoettelkotte to argue that its strengthened bargaining position entitles it to an increase of between 25% and 50% on the basic 15% royalty rate assessed by the jury for gender-selected straws and embryos, or in other words, an ongoing basic royalty rate of between 18.75% and 22.5% on gender-selected straws and embryos. (ECF No. 470 ¶ 20.) As for the enhanced royalty for reverse sorting and fertilization, Mr. Schoettelkotte again proposes an increase of between 25% and 50% on the 4% royalty rate assessed by the jury, or in other words, an ongoing enhanced royalty rate of between 5% and 6%. (*Id.*) As for the minimum, Mr. Schoettelkotte proposes $7.50 per 2-million-cell straw, which is a 50% increase over the $5 minimum royalty for a 2-million-cell straw. (*Id.* ¶ 17.)

As mentioned above (Part I.A), Mr. Schoettelkotte's damages model at trial included oocyte retrieval services and IVF fertilization drugs, which are covered by XY's 053 Patent, as part of the royalty *base*, but he assigned no royalty *rate* to the 053 Patent because of his understanding of its added value, or lack thereof. (ECF No. 470 ¶ 14.) In his current declaration, Mr. Schoettelkotte draws on other witnesses' trial testimony to change course and opine that the 053 Patent has much more value to Trans Ova than he originally understood, particularly to the processes noted (*i.e.*, oocyte retrieval and IVF drug delivery). (*Id.* ¶ 15.) He accordingly opines in light of what trial testimony revealed that an ongoing royalty for the 053 Patent would be appropriate. (*Id.*) He proposes between 3% and 4%. (*Id.* ¶ 20.)

Finally, Mr. Schoettelkotte notes that Trans Ova "generally does not invoice its

10

customers for each segment of the IVF cycle," and therefore it may be simpler "to set an on-going royalty rate to be applied to all of Trans Ova's IVF service cycle revenue as opposed to different rates for different components." (*Id.* ¶ 19.) Under this model, the enhanced royalty for reverse sorting and fertilization in the newly assessed royalty on the 053 Patent would not be separate, but would be subsumed in a single "weight[ed] . . . on-going royalty" on the entire IVF cycle. (*Id.*) That weighted royalty again represents a 25% to 50% increase over the jury's findings, and so ranges from 12.63% to 15.38%. (*Id.* ¶ 20.)

Trans Ova criticizes Mr. Schoettelkotte's opinion as "purely speculative" because he supposedly "invents a percentage-based additur without any real, economic-based rationale." (ECF No. 485 at 8.) But Trans Ova presents no argument about what any reasonable ongoing rate should be other than to repeatedly emphasize that XY's highest royalty rate amongst its licensors is 10%. (ECF No. 485 at 6–8.)

The authority cited in the Federal Circuit's decision on appeal forecloses anything less than the 15% basic rate assessed by the jury. Moreover, even awarding 15% (the same as the jury) would likely be error because the jury was considering a reasonable rate for *pre-verdict* infringement and the Federal Circuit has emphasized that *the verdict itself* is a changed circumstance that strengthens the patentee's bargaining position. *See XY*, 890 F.3d at 1297.

In this light, the Court finds Mr. Schoettelkotte's post-verdict royalties largely, although not completely, persuasive. Concerning the basic rate (what the Court previously awarded at 12.5%), the Court will award 18.75%. The Court finds that this figure, on the low end of XY's proposed range, is most appropriate considering that the

highest negotiated rate XY imposed on any licensee was 10%.  Given that, a rate substantially higher than the 15% floor that constrains this Court is not justified on this record.  The Court finds that an increase of 25% over the 15% floor, to 18.75%, is sufficient and reasonable.

Concerning the minimum royalty on a 2-million-cell straw, Mr. Schoettelkotte proposes $7.50, a figure he arrived at as follows: "the jury found that the royalty rate for sexed straws should be affixed at 15%, which is a 50% increase over the contractual royalty rate of 10%.  Applying the 50% increase to the $5 per straw minimum would suggest a new minimum price of $7.50 per straw."  (ECF No. 470 ¶ 17.)  However, XY has offered no evidence that the 10% royalty rate and the $5 minimum were directly economically correlated, such that an increase to one implies a need to increase to the other.  If anything, a higher royalty rate suggests that the per-straw minimum is less important because it would come into play less often.  But the Court agrees to the limited extent that XY's changed bargaining power in these circumstances would permit it to extract a higher per-straw minimum, regardless of economic correlation to the royalty rate.  The Court finds that, similar to the 25% increase over the 15% floor, a 25% increase to the per-straw minimum is appropriate, or in other words, a minimum of $6.25 per 2-million-cell straw, prorated as appropriate.

As for the enhanced royalty, the Court agrees with XY that the 053 Patent has value to Trans Ova that merits a royalty.  The Court further agrees with Mr. Schoettelkotte's opinion that a weighted, blended rate for the entire IVF cycle is a better course of action than separate royalties for different components of the cycle.  The Court again finds that a 25% increase is appropriate, which Mr. Schoettelkotte

calculated at 12.63%—lower than 15%, but a rate XY has itself endorsed as appropriate under the weighted, blended approach. (ECF No. 471 at 6 & n.1.)

**E.      Quarterly Reports**

Finally, XY requests that "the Court order Trans Ova to provide XY with quarterly royalty reports sufficient to allow XY to evaluate Trans Ova's compliance with the ongoing royalty set by the Court." (ECF No. 471 at 12.) This request is reasonable and will be granted.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. XY's Motion to Set an Ongoing Royalty Rate (ECF No. 471) is GRANTED IN PART and DENIED IN PART as stated above;

2. XY's Motion for Clarification of the Court's Judgment on Ongoing Royalties (ECF No. 592) is GRANTED;

3. No later than **April 8, 2019**, XY shall file a proposed form of amended judgment embodying the Court's rulings regarding the royalty rates, royalty base, the date on which these rates took effect, and reporting requirements. On that same day, XY shall also e-mail an editable copy of the document to martinez_chambers @cod.uscourts.gov.

Dated this 28th day of March, 2019.

BY THE COURT:

William J. Martinez
United States District Judge